# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERVAIZ A. CHAUDHRY and VALLEY CARDIAC SURGERY MEDICAL GROUP,<br><br>                Plaintiffs,<br><br>  v.<br><br>KAREN SMITH, *et al.*,<br><br>                Defendants. | Case No. 1:16-CV-1243-LJO-MJS<br><br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS<br><br><br>(ECF No. 7) |

On June 17, 2016, Plaintiffs Pervaiz A. Chaudhry ("Chaudhry" or "Plaintiff") and Valley Cardiac Surgery Medical Group ("VCSMG") (collectively, "Plaintiffs") commenced this action in Fresno County Superior Court against Defendants Karen Smith, in her official capacity as the Director of the California Department of Public Health ("CDPH"); Steven Lopez, in his personal capacity as the Fresno District Office Manager of the CDPH; Eric Creer, in his personal capacity as a CDPH employee; Bea Hensleit, in her personal capacity as a former Fresno District Office Manager of the CDPH; Shirley Campbell, in her personal capacity; Deidre Kappmeyer, in her personal capacity; and Does 1-10, inclusive (collectively, "Defendants"). ECF No. 1 at 10-30[1]. Through this suit, Plaintiffs assert two claims against Defendants under 42 U.S.C. § 1983 ("§ 1983"), and seek both injunctive relief and monetary damages. *Id*

---

[1] Pincites refer to CM/ECF pagination located at the top of each page.

Defendants subsequently removed the action to this Court, invoking federal question jurisdiction under 28 U.S.C. § 1441. ECF No. 1. Plaintiffs filed a First Amended Complaint ("FAC") on August 29, 2016. ECF No. 6. Now before the Court is Defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 7. Plaintiffs filed their opposition (ECF No. 8), and Defendants replied (ECF No. 9). The matter is appropriate for resolution without oral argument. *See* E.D. Cal. L.R. 230(g). Having reviewed the record and the parties' briefing in light of the relevant law, the Court DENIES Defendants' motion in its entirety.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a

---

[2] All further references to any "Rule" are to the Federal Rules of Civil Procedure, unless otherwise indicated.

2

'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## FACTUAL ALLEGATIONS[3]

Chaudhry is a Fresno-based cardiothoracic surgeon with a substantial interest in VCSMG, a California general partnership. FAC ¶ 1. Chaudhry, who came to Fresno in 2005, worked with other surgeons in VCSMG to establish a cardiac surgery program to serve the medical needs of the community, regardless of the patient's ability to pay, and introduced new techniques to provide care for patients who were previously without options. *Id.* ¶ 13. Prior to the events leading up to this lawsuit, Chaudhry and other VCSMG surgeons were active members of the medical staff at Community Regional Medical Center ("CRMC") and other local hospitals in the Fresno area, and Chaudhry had an "outstanding" reputation amongst patients, colleagues, and hospitals. *Id.* ¶ 15.

On April 2, 2012, Chaudhry performed surgery on Mr. Silvino Perez at CRMC. *Id.* ¶ 16. Chaudhry was continuously present during the surgery and did not leave the operating room to speak until after he completed the surgery and Perez had stabilized. *Id.* ¶ 17.

On April 11, 2012, unbeknownst to Plaintiffs, CDPH received an anonymous complaint falsely alleging that Chaudhry left the operating room while Perez's chest was still open and left the hospital before the surgery was complete, leaving the physician's assistant to take over the surgery, and that Perez entered cardiac arrest. *Id.* ¶ 18. The caller was not present in the operating room during the surgery and his identity was unknown until 2014. *Id.*

---

[3] These allegations are drawn from the FAC, the truth of which the Court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

3

On or about April 16, 2012, CDPH (including Defendants Kappmeyer and Campbell, who were CDPH investigators) began its initial investigation of the anonymous complaint, which included an on-site visit to CRMC from April 17-19, 2012, and interviews with CRMC personnel. *Id.* ¶ 19. However, Defendants did not interview Chaudhry, his physician's assistant, the assistant surgeon, or the anesthesiologist during their on-site visit to CRMC. *Id.* ¶ 20.

From July 10-17, 2012, Campbell and Kappmeyer conducted further investigations at CRMC regarding the April 2 surgery. *Id.* ¶ 21. On July 13, 2012, Kappmeyer and Campbell interviewed Chaudhry without advance notice, and took copious detailed notes during the interview. *Id.* However, CDPH investigators again failed to interview CRMC staff members who had been present during the April 2 surgery, but only interviewed again the individuals they had previously interviewed during their earlier visit. *Id.* Furthermore, CDPH investigators "failed to review the full medical record available to them, or they negligently failed to understand the significance of what they were reading in terms of whether the information in the medical record supported the allegations in the complaint or refuted it," including information that would demonstrate that the allegation that Chaudhry left the operating room was false. *Id.* ¶ 22-23.

CDPH issued to CRMC its initial report containing false allegations against Chaudhry on July 17, 2012. *Id.* ¶ 28. On July 27, 2012, as a result of the CDPH investigation and report, Chaudhry was removed from his position as medical director of cardiac surgery. *Id.*

On August 8, 2012, CDPH sent CRMC a non-public letter containing citations for non-compliance with applicable government conditions, and allowed CRMC the opportunity to review and respond to its report about the April 2 surgery, without any public disclosure. *Id.* ¶ 24. This report contained numerous significant errors and misquotes, including some quotations attributed to Chaudhry that he did not actually make. *Id.* Chaudhry was not permitted to contest the report, and his attempts to persuade CRMC leadership and other officials to contest said report failed. *Id.* ¶ 26.

In February 2013, CRMC submitted its plan of correction to CDPH, which the state accepted. *Id.* ¶ 27. CDPH then publicly disclosed the entire report in March 2013 and assessed against CRMC a $75,000 administrative fine. *Id.* Shortly thereafter, the Fresno Bee published an article about this administrative penalty, referencing the CDPH report, and linking it to the April 2

4

surgery that Chaudhry had performed on Perez. *Id.* Subsequently, Perez's family filed a medical malpractice lawsuit against Chaudhry that was based substantially on allegations contained in the April 11, 2012 anonymous complaint and the final CDPH report. *Id.* The Perez family's lawsuit was widely publicized. *Id.* ¶ 29. Furthermore, five additional malpractice lawsuits based upon the Perez lawsuit and the CDPH report were filed against Plaintiffs. *Id.*

In June 2014, Plaintiffs' counsel obtained the handwritten notes of CDPH investigators while representing him in the malpractice suits. *Id.* ¶ 30. Between July 2014 and June 2015, Plaintiffs endeavored to correct the CDPH report through administrative channels. *Id.* ¶¶ 30-49. CDPH counsel informed Plaintiffs' counsel that it was reviewing the entire investigative file and requested additional information and documents, which Plaintiffs' counsel provided. *Id.* ¶¶ 35-36. Plaintiffs' counsel additionally informed CDPH that the Medical Board of California had completed its investigation and determined that there were no grounds for discipline against Chaudhry in December 2014. *Id.* ¶ 42. After further communications, CDPH counsel told Plaintiffs' counsel that CDPH was "seriously contemplating changing the report." *Id.* ¶ 47. CDPH counsel emailed Plaintiffs' counsel on May 30, 2015 to inform him that a final decision would be made soon. *Id.* ¶ 48. However, on June 19, 2015, CDPH counsel informed Plaintiffs' counsel that CDPH would not correct the report. *Id.* ¶ 50.

On July 9, 2015, Plaintiffs' counsel made a request pursuant to the Public Records Act for the names of persons at CDPH who had made the determination not to alter, change, or withdraw the CDPH report and documentation received from third parties regarding these decisions. *Id.* ¶ 53. Through CDPH's August 4, 2015 response, Plaintiffs' counsel learned that Defendants Creer and Lopez were involved in a meeting that occurred on June 17, 2015 regarding the report. *Id.*

As a result of CDPH's conduct, Plaintiffs claim that they have suffered grievous and irreparable damage to their reputations. *Id.* ¶ 15. Thus, Plaintiff now brings the following causes of action: (1) against Defendant Smith, a violation of Plaintiffs' due process rights pursuant to § 1983, for which Plaintiffs seek an injunction enjoining CDPH from re-broadcasting the report, and ordering CDPH to retract said report and issue a new report; and (2) against the remaining Defendants, the violation of Plaintiffs' due process rights pursuant to § 1983 by their involvement

in the investigation and preparation of the report and failure to correct the report, for which Plaintiffs seek monetary damages for emotional distress and economic harm. *Id.*

## DISCUSSION

### I.  Timeliness

Defendants first argue that Plaintiffs' claims should be dismissed as barred by the two-year statute of limitations[4] generally applicable to § 1983 claims. ECF No. 7-1 at 9-11. According to Defendants, the FAC indicates that Plaintiffs' claims had accrued by December 2013, and their claims are untimely because they filed their original complaint in state court on June 17, 2016. *Id.* Specifically, Defendants note (1) that as early as July 2012, Plaintiffs had knowledge that CDPH had begun its investigation of the anonymous complaint; (2) because Chaudhry was removed as medical director of cardiac surgery at CRMC on July 27, 2012, and in March 2013, CDPH imposed a $75,000 fine on CRMC, Plaintiffs had knowledge of the alleged damage caused by the report as early as March 2013; and (3) the Perez family filed their malpractice lawsuit, based upon the report, against Chaudhry in December 2013, which would have enabled Plaintiffs to investigate the bases for their lawsuit by using civil discovery at that time. *Id.* at 10-11.

Against this argument, Plaintiffs assert that that pursuant to the California Supreme Court's decision in *McDonald v. Antelope Valley Community College District*, 45 Cal. 4th 88, 99 (2008), equitable tolling applies in their situation because they voluntarily elected to pursue an alternative administrative remedy to correct the CDPH report. ECF No. 8 at 16-17.

Equitable tolling is a "judicially created, nonstatutory doctrine … designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald*, 45 Cal. 4th at 99 (internal citations omitted). The doctrine applies "'(w)hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974) (en banc) (quoting *Myers v. Cty. Of Orange*, 6 Cal. App. 3d 626, 634

---

[4] "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir.2004). In California, the statute of limitations for personal injury actions is two years. Cal. Code. Civ. Proc. § 335.1.

(1970)). *McDonald* reiterated the long-held principle that courts may permit equitable tolling when a plaintiff voluntarily pursues an alternate administrative remedy to address her grievance so long as three requirements are satisfied: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." 45 Cal. 4th at 101-02 (citing *Campbell v. Graham-Armstrong*, 9 Cal. 3d 482 (1973), *Elkins*, 12 Cal. 3d 410, and *Addison v. State of California*, 21 Cal. 3d 313 (1978)). *McDonald* then held that a plaintiff who had voluntarily filed an internal administrative procedure to resolve her employment discrimination grievance could invoke equitable tolling to file her case in state court after the relevant statute of limitations had expired. *Id.* at 105.

The Court agrees with Plaintiffs and finds that *McDonald* applies here. As a preliminary matter, the Ninth Circuit has held that "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo v. United States*, 63 F.3d 1204, 1206 (9th Cir. 1995) (internal citations omitted). Here, the factual allegations permit Plaintiffs to demonstrate that the statute may be tolled, as they clearly indicate that in September 2014, Plaintiffs voluntarily began an alternative procedure within CDPH to resolve their issues with the report, a process that extended until June 2015, and that Plaintiffs had some reason to believe that this procedure could result in correcting the CDPH report.[5] FAC ¶¶ 30-49. This internal procedure, like the one in *McDonald*, appeared to offer Plaintiffs "a full opportunity to formally or informally resolve a dispute in a way that [had the possibility of] minimiz[ing] or eliminat[ing] entirely the need for further judicial proceedings." 45 Cal. 3th at 105.

The Court finds that Plaintiffs' allegations here are sufficient to satisfy the third requirement set forth in *McDonald*, in that they demonstrate that good faith conduct on the part of Plaintiffs to wait until the conclusion of the administrative proceeding before filing suit. *See, e.g., McEnroe v.*

---

[5] Defendants argue that that CDPH counsels' statements reflect merely "that CDPH was considering the matter in good faith, and that the *possibility* of changing the report was being considered," ECF No. 9 at 6 (emphasis in original), thereby implying that CDPH counsels' comments should not have deterred Plaintiffs from filing suit earlier. At this stage of the proceedings, however, the Court declines to entertain Defendants' interpretation of the factual allegations because of its obligation to construe the factual allegations in the light most favorable to Plaintiffs. The Court finds that these allegations do not foreclose Plaintiffs from demonstrating that they are eligible for equitable tolling. *Starr*, 652 F.3d at 1216 ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).")

*AT&T Mobility Svcs., LLC.*, No. 15-cv-02190-HSG, 2015 WL 5168671, at *3 (N.D. Cal. Sept. 3, 2015). Moreover, Plaintiffs now seek essentially the same relief through the pending suit that they sought through the internal procedure. Therefore, Defendants (all of whom are or were affiliated with CDPH) clearly had notice of Plaintiffs' claims against them, satisfying the first requirement of *McDonald*. *See* 45 Cal. 4th at 102 ("The filing of an administrative claim … affords a defendant notice of the claims against it so that it may gather and preserve evidence, and thereby satisfies the principal policy behind the statute of limitations."). Relatedly, Defendants have not demonstrated that they would suffer any prejudice, indicating that the final *McDonald* requirement has been met. *See id.* Accordingly, the Court finds that Plaintiffs' claims were equitably tolled during the pendency of Chaudhry's internal grievance with CDPH, which spanned from approximately September 2014 to June 2015. *See id.*

Having found that equitable tolling pursuant to *McDonald* should apply here[6], the Court now turns to the question of whether Plaintiffs' claims were timely filed. This inquiry depends upon the date that Plaintiffs' claims had accrued, which would begin the two-year statute of limitations period. *See Jolly v. Eli Lilly & Co.*, 33 Cal. 3d 1103, 1114 (1988) ("the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged."). Plaintiffs assert that their claims did not accrue until June 2014. ECF No. 8 at 15-16. As mentioned above, Defendants contend that Plaintiffs' claims had accrued as of December 2013, ECF No. 9 at 4, which would mean that the deadline to file this suit passed in December 2015. However, even assuming the earlier accrual date of December 2013, the Court would still need to account for the nine-month period of equitable tolling from September 2014 until June 2015. "[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (emphasis in original). When the equitable tolling period, September 2014 - June 2015, is taken into account, the deadline to file was extended until approximately August 2016. To be clear, ten

---

[6] Defendants' reply fails to explain why equitable tolling pursuant to *McDonald* should not apply here. *See* ECF No. 9 at 2-6. Rather, Defendants appear to conflate the doctrines of equitable estoppel and equitable tolling, as they premise their opposition to Plaintiffs' equitable tolling argument on the notion that Plaintiffs have not established the requirements for equitable estoppel. *See id.* Because equitable estoppel is not at issue in this case, Defendants' arguments to this point are inapposite.

8

months elapsed between the accrual of Plaintiffs' claims (December 2013) and the beginning of the equitable tolling period (September 2014). The tolling period began again when CDPH notified Plaintiffs in June 2015 that they would not change the report, leaving Plaintiffs fourteen remaining months (until August 2016) within which to file this suit. Thus, because Plaintiffs filed the complaint in June 2016, they filed within two years of their claims' accrual.

For these reasons, the Court finds that Plaintiffs' claims were timely filed and DENIES the motion to dismiss on this ground.

## II. Prosecutorial Immunity

The second basis upon which Defendants seek dismissal of the FAC is prosecutorial immunity. ECF No. 7-1 at 11-14. Under the Supreme Court's decision in *Butz v. Economou*, government officials who perform judicial, quasi-judicial or prosecutorial functions may claim absolute immunity for their judicial, quasi-judicial and prosecutorial acts. 438 U.S. 478, 514-15 (1978). Because each Defendant was a CDPH employee acting under color of California law, Defendants contend that prosecutorial immunity precludes Plaintiffs' claims against them. *Id.* In support of this argument, Defendants note that the California Health & Safety Code requires CDPH to investigate, inspect and make determinations of "adverse events" reported by health facilities, and to publish and share its written reports expressing the determinations of these adverse events, and that licensees may request a hearing if they dispute a determination by CDPH . *Id.* (citing Cal. Health & Safety Code §§ 1278, 1278.5, 1279.1, 1279(d), 1279.2(a) & (b), 1279.3(b)), 1280.1(b).

Plaintiffs argue that Defendants cannot claim absolute immunity because the individual Defendants were acting in an investigatory, rather than judicial or prosecutorial function. ECF No. 8 at 18-21. Plaintiffs also analogize this situation to other contexts in which courts have denied absolute immunity, such as school board members sitting in as adjudicators in student disciplinary proceedings, *Wood v. Strickland*, 420 U.S. 308, 320-22 (1975), and prison employees deciding prison disciplinary proceedings, *Cleavinger v. Saxner*, 474 U.S. 193, 205-06 (1985). ECF No. 8 at 21. Plaintiffs also emphasize that the California Health & Safety Code only affords *licensees* the opportunity to request a hearing, and that because they were not licensees, they never had the opportunity for a hearing to dispute CDPH's determination. *Id.*

The Court agrees with the position of the Plaintiffs. Defendants bear the burden of demonstrating that they are entitled to absolute immunity. *Stapley v. Pestalozzi*, 733 F.3d 804, 811 (9th Cir. 2013). Here, Defendants have failed to meet this burden because they have not demonstrated that their actions were sufficiently analogous to those of a prosecutor or a judge. The Supreme Court has identified six factors "as characteristic of the judicial process" for courts to consider in determining whether government officials are entitled to absolute or qualified immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger*, 474 U.S. at 202 (citing *Butz*, 438 U.S. at 511). The Court does not dispute that CDPH investigators should be able to perform their functions without harassment or intimidation, and the Court does not believe that the factors regarding insulation from political influence and the importance of precedent are relevant in this situation. However, the remaining factors applicable to this situation direct the Court to find that Defendants are not entitled to prosecutorial immunity. The FAC alleges that Plaintiffs themselves had no means of contesting the CDPH investigation or officially appealing the report, but that only CRMC had the ability to do so. In other words, Plaintiffs have alleged that they had essentially no input into CDPH's investigation and no official recourse from CDPH's determination not to change its report, and therefore lacked the protections afforded to individuals in judicial proceedings as referenced in *Butz*. ECF No. 8 at 21. Defendants' reply offers nothing to rebut Plaintiffs' arguments. Therefore, the Court DENIES Defendants' motion to dismiss on the basis of prosecutorial immunity.

### III. Eleventh Amendment

Next, Defendants assert that Defendant Karen Smith, director of CDPH, is immune from suit under the Eleventh Amendment and that this Court lacks jurisdiction. ECF No. 7-1 at 14-16.

Plaintiffs oppose on the grounds that the FAC sufficiently allege that this case should fall within the exception to Eleventh Amendment immunity identified in *Ex Parte Young*, 209 U.S. 123

10

(1908), because Plaintiffs seek declaratory and injunctive relief on the basis of federal constitutional law. ECF No. 8 at 21-22.

Plaintiffs are correct on this issue. It is well-established that the Eleventh Amendment generally bars suits against states, their agencies, and employees acting in their official capacity. *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, pursuant to the Supreme Court's decision in *Ex Parte Young*, an exception to the Eleventh Amendment exists for suits for prospective declaratory injunctive relief against state officers, sued in their official capacities to enjoin an alleged ongoing violation of federal law. *See Agua Caliente Band of Cahuilla Indians*, 223 F.3d 1041, 1045 (9th Cir. 2005)); *see also Mohsin v. Cal. Dep't of Water Res.*, No. 2:13-cv-01236-TLN-EFB, 2015 WL 7282904, at *4 (Nov. 18, 2015) (finding that the *Ex Parte Young* doctrine applied because the plaintiff sought prospective injunctive relief under federal law against state government defendants). The FAC alleges violations of Plaintiffs' due process rights under the Fourteenth Amendment requests prospective injunctive relief—a declaration by the Court ordering Defendant Smith in her official capacity to withdraw the report and publish a new report "vindicating" Plaintiffs and an injunction enjoining CDPH from re-broadcasting the original report. FAC ¶¶ 69, 71. Defendants, in their reply, misapprehend the FAC and the nature of the requested relief, as they cite only case law that federal courts lack jurisdiction to instruct state officials on how to conform their conduct to state law. Defendants' jurisdictional argument is clearly inapposite in this case, given that Plaintiffs have alleged violations of their constitutional rights under federal law and seek prospective, not retrospective relief. *See* ECF No. 9 at 7. The Court further finds that Karen Smith is properly named as a defendant because she is sued in her official capacity as director of the CDPH for prospective declaratory and injunctive relief pursuant to § 1983. *Freedom From Religion Found., Inc. v. Geithner*, 715 F. Supp. 2d 1051, 1058-59 (E.D. Cal. 2010) ("When sued for prospective injunctive relief, a state official in her official capacity is considered a 'person' for § 1983 purposes."). Accordingly, the Court DENIES Defendants' motion to dismiss on these grounds.

//

//

**IV.     Qualified Immunity**

Finally, Defendants argue that this case should be dismissed on the basis of qualified immunity, because the FAC has failed to allege facts sufficient to show that the contours of Plaintiffs' constitutional rights were "sufficiently clear that a reasonable official would understand that what he is doing violates that right," and that the "unlawfulness [was] apparent." ECF No. 7-1 at 18 (quoting *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995)).

Plaintiffs counter that Defendants are not entitled to a qualified immunity defense because they "cannot claim they could objectively feel their conduct was lawful; that is, intentionally filing a false CDPH report and/or not interviewing key witnesses, nor obtaining readily retrievable objective documentary electronic evidence showing that the report was false." ECF No. 8 at 22.

The Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Nevertheless, "a Rule 12(b)(6) dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). At this stage of proceedings, the Court examines whether the FAC sufficiently alleges the violation of a specific constitutional right, whether this right was so clearly established as to alert a reasonable individual similarly-situated to Defendants of its constitutional parameters, and whether this reasonable individual would have believed that his conduct was lawful. *See Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1195 (E.D. Cal. 2011) (quoting *McDade v. West*, 223 F.3d 1136, 1142 (9th Cir. 2000)). The FAC alleges that 1) Defendants violated Plaintiffs' Fourteenth Amendment due process rights through the publication of a report containing false statements that Chaudhry left the operating room during an open-heart surgery and their refusal to correct the report despite being presented with evidence that the report contained false statements; 2) that this publication resulted in Chaudhry's removal from his position as medical director of cardiac surgery at CRMC; and 3) Defendants' actions significantly and irreparably harmed Plaintiffs' reputation and further caused Plaintiffs significant economic harm.

In analyzing Defendants' qualified immunity claim, the Court will first determine whether Plaintiffs have adequately alleged that Defendants violated their Fourteenth Amendment due process rights. Although it is well-established that "injury to reputation, standing alone, is not a liberty or property interest sufficient to invoke the procedural protections contained in the Due Process Clause of the Fourteenth Amendment," the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 694 (1976), "le[ft] open the door to what has come to be known as the 'stigma-plus' claim." *Eberhard v. Cal. Highway Patrol*, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014) (citing *WMX Techs, Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc)). To plead a "stigma-plus" claim, a plaintiff must show "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest [] such as employment,' or the alteration of a right or status recognized by state law," and that he received inadequate process for this deprivation. *See Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quoting *Paul*, 424 U.S. at 701, 711); *Westfall v. City of Crescent City*, No. CV 10-4222 NJV, 2011 WL 2110306, at *7-8 (N.D. Cal. May 26, 2011).

Under this standard and in light of its obligation to construe the factual allegations in the light most favorable to Plaintiffs, the Court finds that the FAC adequately alleges a violation of Plaintiffs' Fourteenth Amendment procedural due process rights. First, the FAC's allegations regarding CDPH's publication of the report falsely stating that Chaudhry left the operating room during open-heart surgery constitutes a "stigmatizing statement," because the report led to Chaudhry's removal from his position at CRMC and substantial damage to his reputation amongst patients, colleagues, and the community at large. *Stretten v. Wadsworth Veterans Hosp.*, 537 F2d 361, 366 (9th Cir. 1976) (citing *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972)) ("[t]he 'liberty interest' is the interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy"). Relatedly, Chaudhry's loss of his employment as the result of Defendants' conduct constitutes the denial of a tangible liberty or property interest that triggers the Fourteenth Amendment's due process protections. *See Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (citing *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001)); *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1044 (9th Cir.

1994) ("Discharge assumes a constitutional dimension when the employee has a property interest in continued employment, or a liberty interest in not being defamed, as a result of which she may not be terminated without due process"). Finally, Plaintiffs' allegation that they were never given the opportunity to contest the report is sufficient to demonstrate that they did not receive due process for the deprivation. *Matthews v. Harney County, Or. School Dist. No 4*, 819 F.2d 889, 892 (9th Cir. 1987). As mentioned above, Cal. Health & Safety Code § 1280.1 provides only licensees with the opportunity to request a hearing to correct deficiencies in CDPH reports, and Plaintiffs have alleged that Chaudhry was not a licensee afforded with this opportunity.

Having found that Plaintiffs sufficiently alleged a violation of their Fourteenth Amendment rights, the Court must next evaluate whether there is sufficient causation between Defendants and the alleged "stigma-plus" constitutional violation. *See Tibbetts v. Kulongoski*, 567 F.3d 529, 539 (9th Cir. 2009). As observed by the Northern District in *Eberhard*, the Ninth Circuit has not explicitly held that the "stigma" and "plus" elements need to be committed by the same government actor to state a due process claim, and there is a circuit split on the issue. 73 F. Supp. 3d at 1131. However, the Ninth Circuit has recognized that in the context of § 1983 claims, "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gini*, 40 F.3d at 1044 (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)). Here, the FAC alleges that Defendants, by their publication of the report, caused Chaudhry to be removed from his position at CRMC, and that Defendants knew or should have known that the report contained false information about Chaudhry, and that Defendants knew or should have known that the report would "significantly, substantially and irreparably harm Plaintiffs' reputation and cause significant economic injury to Plaintiffs." FAC ¶ 73. At this stage of proceedings, these allegations are sufficient to state a claim under § 1983 that Defendants violated Plaintiffs' Fourteenth Amendment due process rights.

Regarding Defendants' contention that such rights were not clearly established in 2012-13, the Court notes that *Paul*, the Supreme Court case that forms the foundation for the "stigma-plus"

14

doctrine, was decided in 1976. As the cases cited above demonstrate, the Ninth Circuit and its district courts have continued to apply the doctrine in the decades that followed, and as early as 1987, began using the term "stigma-plus." *See, e,g.*, *Castenada v. U.S. Dept. of Agriculture*, 807 F.2d 1478, 1480 (9th Cir. 1987). In line with these cases, the Court has determined that Plaintiffs adequately pleaded that Defendants violated their Fourteenth Amendment due process rights, that these rights were clearly established at the time of the violation, and that reasonable individuals in Defendants' positions could not have believed that their actions were lawful. Therefore, the Court DENIES Defendants' motion to dismiss on qualified immunity grounds.

## CONCLUSION AND ORDERS

For these reasons, Defendants' motion to dismiss is DENIED IN ITS ENTIRETY. Defendants must answer the FAC within twenty-one (21) days of the date of this Order.

IT IS SO ORDERED.

Dated:   **December 16, 2016**        /s/ Lawrence J. O'Neill
                                      UNITED STATES CHIEF DISTRICT JUDGE