UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERVAIZ A. CHAUDHRY, M.D. and VALLEY CARDIAC SURGERY MEDICAL GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>DR. KAREN SMITH, in her official capacity as the Director of the California Department of Public Health; STEVEN LOPEZ, California Department of Public Health, Fresno District Office Manager, in his personal capacity; ERIC CREER, in his personal capacity as an employee of the California Department of Public Health; SHIRLEY CAMPBELL, in her personal capacity; DEIDRE KAPPMEYER, in her personal capacity,<br><br>Defendants. | 1:16-cv-01243-LJO-SAB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT (Doc. 46)** |

## I. INTRODUCTION

This case concerns claims brought by Pervaiz A. Chaudhry, M.D. and Valley Cardiac Surgery Medical Group ("Plaintiffs") against Dr. Karen Smith, Steven Lopez, Eric Creer, Shirley Campbell, and Deidre Kappmeyer ("Defendants"). Plaintiffs allege Defendants' investigation of an anonymous complaint regarding a surgery violated Plaintiffs' due process rights pursuant to 42 U.S.C. § 1983. Doc. 6. Having carefully considered the record in this case, the parties' briefing, and the relevant law, summary judgment will be GRANTED as to Defendant Eric Creer, and DENIED as to Defendants

1

Dr. Karen Smith, Steven Lopez, Shirley Campbell, and Deidre Kappmeyer.

## II. BACKGROUND

**A.    Factual Background**[1]

    **1.    The Underlying Surgery**

Plaintiff Pervaiz A. Chaudhry, M.D., was a cardiothoracic surgeon and a surgeon with Plaintiff Valley Medical Group, a California General Partnership. Defendants were employees of California Department of Public Health ("CDPH") and allegedly acting under color of state law. Doc. 51 ¶ 1. On April 2, 2012, Dr. Chaudhry performed open heart surgery on patient Silvino Perez at Community Regional Medical Center ("CRMC"). *Id.* ¶ 2. After the surgery, Mr. Perez went into cardiac arrest and suffered hypoxic brain injury. *Id.* ¶ 3; *see also* Docs. 49 ¶ 16, 46, Exs. C & D.

    **2.    The Regulatory Structure**

State agencies make agreements with the federal government to conduct surveys of hospitals participating in the Medicare and Medicaid programs to ensure compliance with minimum health and safety standards. 42 C.F.R. §§ 488.10(a)(1), (c). If there is an allegation of substantial non-compliance, the state agency must conduct a series of escalating investigations. *See* 42 C.F.R. §§ 488.9(a), (c)(2)-(3). CDPH thus ensures hospital compliance through such validation surveys.

When conducting surveys, CDPH surveyors record violations, otherwise known as "deficiencies," and refer hospitals for various enforcement actions. CDPH's official findings of the hospital survey are presented on a Form 2567 (also known as a statement of deficiencies). The Form 2567 must be made public no later than 90 calendar days after the survey is completed. 42 C.F.R. § 401.133(a). Investigations may produce both a Federal Form 2567 and State Form 2567.

---

[1] The parties have significant disagreements as to which facts are established and which facts remain disputed. *See* Docs. 51, 54. Plaintiffs and Defendants also lodged numerous objections to evidence submitted by the other party. *E.g.,* Docs. 51-52, 54. The Court has reviewed the parties' factual disputes, and objections and responses thereto, and finds that the following facts are undisputed or not credibly disputed. Further, the Court has reviewed the objections (and the responses) to the evidence necessary to the Court's order and finds the objections meritless.

2

CDPH also issues administrative penalties to hospitals via State Form 2567 under Cal. Health & Safety Code § 1280, *et seq*. Cal. Health & Safety Code § 1279.2(a) requires onsite investigations if CDPH receives a written or oral complaint indicating an ongoing threat or imminent danger of death or serious bodily harm. Section 1279.3 provides that CDPH shall make information regarding reports of substantiated adverse events and outcomes of inspections and investigations readily accessible to consumers throughout California. However, information such as names of health care professionals shall not be included in the information released. Cal. Health & Safety Code § 1279.3(c).

If a facility does not agree that the deficiency poses and immediate and substantial hazard or believes the plan of correction will not correct the hazard, or if the facility proposes a more efficient or effective means of remedying the deficiency, the facility may, within 10 days of receiving the plan of correction from CDPH, appeal the order. Cal. Health & Safety Code §§ 1280(b)-(c), 1280.5. Similarly, for federal surveys of deficiencies, a facility may dispute survey findings upon receipt of the official statement of deficiencies. 42 C.F..R § 488.331.

### 3. <u>Defendants' Investigation of CRMC and Dr. Chaudhry</u>

On April 11, 2012, CDPH received an anonymous call alleging that Dr. Chaudhry left the operating room while Mr. Perez's chest was still open, had his physician's assistant to take over the surgery, and left the hospital before the surgery was completed, leading to the Mr. Perez's cardiac arrest. Doc. 51 ¶ 3.

On about April 16-19, 2012, CDPH began its investigation of the anonymous complaint. *Id.* ¶ 4. On April 17, 2012, CDPH's Health Facilities Evaluator Nurse Adams Yussif – who is not a defendant in this case – visited the surgery department of CRMC to interview witnesses. *Id.* ¶¶ 4-5. On April 17, 2012, Mr. Yussif completed CDPH's Statement of Deficiencies (State 2567). *Id.* ¶8. Defendant Shirley Campbell was employed as a Health Facilities Evaluator Manager I at CDPH. *Id.* ¶ 10. In July 2012, Ms. Campbell was assigned to investigate and conduct a federal complaint validation survey at CRMC to determine whether CRMC was in compliance with federal requirements set forth in Medicare

Conditions of Participation. *Id.* ¶¶ 11-12, 15. Ms. Campbell was not involved in the April 2012 investigation handled by Mr. Yussif. *Id.* ¶ 13. Defendant Deidre Kappmeyer appears to have had a similar investigatory role as Ms. Campbell, but has since passed away. *See* Doc. 46, Lewis Declaration at 3; *see also* Docs. 50-4 (Kappmeyer Investigation Report) and 50-7 (Kappmeyer Notes). Ms. Kappmeyer's estate has not been substituted as a Defendant in this matter. *See* Fed. R. Civ. Proc. 25. The parties offer minimal discussion and evidence regarding Ms. Kappmeyer's role in the investigation. Critically, the parties do not provide any undisputed facts or argument regarding Ms. Kappmeyer's role in the underlying investigation or how her death impacts this case.

Defendant Steven Lopez was a Health Facilities Evaluator Supervisor for CDPH's Fresno District Office. *Id.* ¶ 24. Mr. Lopez verified that the State and Federal 2567s were based on the surveyor notes, hospital clinical records, hospital administrative records, and medical bylaws for policies and procedures. *Id.* ¶ 26; Doc. 46, Lopez Decl. ¶¶ 3-7. Mr. Lopez also reviewed and signed CRMC's plans of correction in response to the State and Federal 2567s. Doc. 51 ¶ 28.

As a result of the investigation, CRMC terminated all its contracts with Plaintiffs for its hospitals and Dr. Chaudhry's privileges at its hospitals. Doc. 49, Dr. Chaudhry Decl. ¶¶ 26(d), (f). Dr. Chaudhry also submits evidence that he was unable to obtain affordable malpractice insurance after the investigation. *Id.* ¶ 26(g). Dr. Chaudhry was sued in a separate case by the estate of Mr. Perez. *Id.* ¶ 26(c). Three years after State 2567 was completed, Dr. Chaudhry and his counsel requested to amend the State 2567. *Id.* ¶ 30. However, only the hospital, not hospital staff nor an attorney for hospital staff, can dispute a State (or Federal) 2567. *Id.* Defendants Campbell, Lopez, Smith, and Creer had no personal involvement with the CDPH's decision not to amend the State 2567 per Plaintiffs' request. *Id.* ¶¶ 22, 32, 37. Nevertheless, on November 25, 2014, CDPH issued an Amended Statement of Deficiencies based on information from CRMC's hospital risk manager interview and hospital records. Doc. 54 ¶ 31; Doc. 50, Banuelos Decl., Ex. D. The Amended Statement revised the alleged time when Dr. Chaudhry had left the operation room to a time later than stated in the original Statement of

4

Deficiencies. *Id.* However, the ultimate conclusions of the report remained the same. *Id.*

Defendant Eric Creer was and is still an employed as a Public Records Coordinator at CDPH's Center for Healthcare Quality in Sacramento. *Id.* ¶ 33, 34. Mr. Creer was involved in two California Public Records Act Requests regarding CDPH's investigation of Dr. Chaudhry's surgery for Mr. Perez. *Id.* ¶34. The first Public Records Act Request was from the Fresno Bee on February 3, 2014 in which Mr. Creer requested responsive documents from CDPH's Fresno District Office and forwarded the documents to CDPH's Assistant Chief Counsel for review and redaction. *Id.* ¶ 35. Responsive documents were redacted as to names of all persons, including Dr. Chaudhry, and any and all potentially defamatory information before they were released to Fresno Bee. *Id.* The second Public Records Act Request came from Plaintiff's counsel on July 9, 2015. *Id.* ¶ 36. The request was forwarded to CDPH's Assistant Chief Counsel again. *Id.* Non-privileged responsive documents were gathered and sent out to Plaintiff's counsel. *Id.* Mr. Creer is solely a Public Records Coordinator for CDPH and had no personal knowledge and/or involvement in the handling, process, or decision to amend, correct, or change any issued Statement of Deficiencies related to the subject incident. *Id.* ¶ 37.

Defendant Dr. Karen Smith is sued only in her official capacity as Director of CDPH. *Id.* ¶ 38. Dr. Smith had no personal knowledge, communication, and/ or involvement regarding any step or process of the issued State or Federal 2567 regarding the underlying surgery at issue. *Id.* ¶ 39.

**B.      Procedural Background**

Plaintiffs filed this lawsuit on June 17, 2016, in Fresno County Superior Court. Doc. 1, Exs. A & Ex. B. Defendants timely removed to this Court on August 19, 2017. Doc. 1. Plaintiffs filed an amended complaint on August 29, 2016. Doc. 6. Plaintiffs asserted two causes of action: (1) Pursuant to 42 U.S.C. § 1983 for violation of due process rights against Defendant Smith in her official capacity and (2) Pursuant to 42 U.S.C. § 1983 for violation of due process rights against all Defendants in their personal capacity except Dr. Smith. *Id.* ¶¶ 62-76. On December 7, 2018, Defendants filed their motion for summary judgment on all causes of action. Doc. 49. Plaintiffs filed their opposition on December

1  21, 2018. Docs. 48-52. Defendants filed their reply on December 31, 2018. Docs. 53-54. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on January 2, 2019. Doc. 55.

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

# IV. DISCUSSION

Defendants argue that they are entitled to summary judgment because of absolute immunity, or, in the alternative, qualified immunity. Plaintiffs counter that Defendants are not entitled to either form of immunity. For the reasons described below, the Court finds that only Defendant Eric Creer is entitled to qualified immunity, and no other defendant is entitled to absolute or qualified immunity.

## A. Absolute Immunity

"State and federal executive branch officials charged with constitutional or statutory violations are entitled to absolute immunity under certain limited circumstances." *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). The Supreme Court has made clear that an official's entitlement to absolute immunity depends upon the particular function he or she performs. *Butz v. Economou*, 438 U.S. 478, 507 (1978). The question is not one of status, but of the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). Generally speaking, government officials who perform judicial, quasi-judicial, prosecutorial, or quasi-prosecutorial functions may claim absolute immunity for their judicial, quasi-judicial and prosecutorial acts. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010); *see also Butz*, 438 U.S. at 514-15. The parties have not cited and the Court cannot locate any authority directly applying absolute immunity to facts similar to those presented here. Nonetheless, the Supreme Court has identified six factors "as characteristic of the judicial process" for courts to consider in determining whether government officials are entitled to absolute or qualified immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 511). Defendants bear the burden of demonstrating that they are entitled to absolute immunity. *Stapley v. Pestalozzi*, 733 F.3d

7

804, 811 (9th Cir. 2013).

The factors regarding insulation from political influence and the importance of precedent are less relevant to this situation, but a lack of political influence regarding decisions of hospital safety and the predictability for hospitals provided by consistent investigatory precedent would weigh in favor of absolute immunity. There is no doubt a need to assure that state officials such as Defendants can perform their functions without harassment or intimidation.

Nevertheless, the remaining factors weigh against prosecutorial immunity for Defendants. The parties do not dispute that Plaintiffs themselves had no means of contesting the CDPH investigation or officially appealing the report, and only CRMC had the ability to do so. *See* Cal. Health & Safety Code Sections 1280(b)-(c), 1280.5 ("[t]he State department shall accept consider and resolve written appeals by a *licensee or health facility administrator* of findings made upon the inspection of a health facility.") (emphasis added); 42 C.F.R. § 488.331 (for federal surveys, a facility may dispute a statement of deficiencies); Doc. 51 ¶ 30. There was no true adversarial process in which Plaintiffs could affirmatively participate. In other words, the undisputed facts show that Plaintiffs had minimal input into CDPH's investigation and no official recourse to appeal CDPH's determinations in its report, and therefore lacked the protections afforded to individuals in judicial proceedings as referenced in *Butz*. *See also Romano v. Bible*, 169 F. 3d 1182, 1186-87 (9th Cir. 1992) (affirming grant of absolute immunity where "features and safeguards" of licensee disciplinary proceeding included formal initiation of disciplinary proceedings coinciding with settlement negotiations with the licensee, judicial review of decisions, retention of counsel, written decisions with findings of fact, opportunity to present and cross-examine witnesses, opportunity to introduce and rebut evidence, adequate notice of the hearing and charges, protections from political influence, among other numerous safeguards similar to traditional judicial or prosecutorial proceedings ).

Therefore, Defendants are not entitled to absolute immunity. The Court turns to whether Defendants are entitled to qualified immunity.

8

**B.     Qualified Immunity**

Qualified immunity is an affirmative defense that "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223 (2009). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Further, it "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

To determine whether officers are entitled to qualified immunity, a court conducts a two-step inquiry. "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231. To be a clearly established constitutional right, a right must be sufficiently clear "that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation and internal quotation marks omitted). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 20. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*,

483 U.S. 635, 640 (1987) (citations omitted); *see also City of Escondido, Cal. v. Emmons*, No. 17-1660, 2019 WL 113027, at *2 (U.S. Jan. 7, 2019).

Consequently, at summary judgment, an officer may be denied qualified immunity in a § 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). In making this determination, the Court still must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014). The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). But, "[w]here disputed facts exist, [a court] determines if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct." *Wilkins*, 350 F.3d at 951.

Although it is well-established that "injury to reputation, standing alone, is not a liberty or property interest sufficient to invoke the procedural protections contained in the Due Process Clause of the Fourteenth Amendment," the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 694 (1976), "le[ft] open the door to what has come to be known as the 'stigma-plus' claim." *Eberhard v. Cal. Highway Patrol*, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014) (citing *WMX Techs, Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc)). To prove a "stigma-plus" claim, a plaintiff must show "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of 'some more tangible interest [] such as employment,' or the alteration of a right or status recognized by state law," and that he received inadequate process for this deprivation. *See Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quoting *Paul*, 424 U.S. at 701, 711); *Westfall v. City of Crescent City*, No. CV 10-4222 NJV, 2011 WL 2110306, at *7-8 (N.D. Cal. May 26, 2011).

The Ninth Circuit has not explicitly held that the "stigma" and "plus" elements need to be

committed by the same government actor to state a due process claim, and there is a circuit split on the issue. *Eberhard*, 73 F. Supp. 3d at 1131. However, the Ninth Circuit has recognized that in the context of § 1983 claims, "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gini*, 40 F.3d at 1044 (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)).

Where these elements all exist, the plaintiff is "entitled to notice and a hearing to clear his name." *Ulrich*, 308 F. 3d at 982 (quoting *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1100 (9th Cir. 1981)).

Defendants do not appear to dispute that the due process rights at issue were clearly established such that a reasonable official would understand violation of that right to be unlawful. *See, e.g.*, *Castenada v. U.S. Dept. of Agriculture*, 807 F.2d 1478, 1480 (9th Cir. 1987) (early example of Ninth Circuit's use of term "stigma-plus"). Thus, the only issue is whether the facts alleged, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right.

### 1. **Defendant Eric Creer Is Entitled to Qualified Immunity**

The undisputed facts show that Defendant Eric Creer's only involvement in this case was responding to two Public Records Act Requests—the first from the Fresno Bee and the second from Plaintiffs' counsel. *See* Doc. 51 ¶34. Mr. Creer gathered responsive documents, forwarded the documents to CDPH's counsel for review and redaction, and sent out responsive non-privileged documents to the requestors. *Id.* ¶¶ 35-36. It is undisputed that all names, included Dr. Chaudhry's, were redacted from all documents prior to being sent to the Fresno Bee. *Id.* It is undisputed that Mr. Creer is "solely a Public Records Coordinator for CDPH and had no personal knowledge and/or involvement in the handling, processing or decision to amend, correct, or change any issued Statement of Deficiencies related to the subject incident."

There is no factual linkage, even viewing the record in the light most favorable to Plaintiffs,

11

between Mr. Creer and any alleged violation of Plaintiffs' rights. *See Neighbors v. Clark-Barker*, No. CIV S 01 0596 LKKJFM, 2005 WL 1413175, at *2 (E.D. Cal. June 16, 2005) (while "[a]ll reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party . . . inferences are not drawn [out] of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.") (internal citations and quotations omitted). Plaintiffs do not offer any evidence that would create a genuine dispute as to whether Mr. Creer violated Plaintiffs' due process rights. All Mr. Creer appears to have done is follow his duties to respond to public records requests, including Dr. Chaudhry's own request. Indeed, it would be totally unreasonable on the undisputed facts for Mr. Creer to expect his conduct to "impact some more tangible interest [] such as [Dr. Chaudhry's] employment."

Thus, taking the record in the light most favorable to them, Plaintiffs fail to show how Mr. Creer's conduct violated any of their constitutional rights, Mr. Creer is entitled to qualified immunity, and summary judgment will be GRANTED as to Defendant Eric Creer.

### 2. **Dr. Karen Smith Is Not Entitled to Qualified Immunity**

Dr. Smith is sued only in her official capacity as director of CDPH. Plaintiffs seek only injunctive and declaratory relief as to Dr. Smith. Qualified immunity is not available to defendants sued only in their official capacity, and, additionally, "qualified immunity applies only to liability for money damages—not injunctive or declaratory relief." *See Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 616 (9th Cir. 2018). Therefore, Dr. Smith is not entitled to qualified immunity and summary judgment will be DENIED as to Dr. Smith.

### 3. **Defendants Lopez, Campbell, and Kappmeyer Are Not Entitled to Qualified Immunity**

Defendants argue that none of their acts were unconstitutional or committed knowing they could set in motion a series of acts by others that would violate Plaintiffs' constitutional rights. Defendants rely on the undisputed facts that they did not participate in responding to the request to change and

12

Defendants repeatedly assert they acted in good faith and only followed their statutory duties.

Nevertheless, viewing the facts in a light most favorable to Plaintiffs, there are genuine disputes as to the material facts surrounding whether Defendants Lopez, Campbell, and Kappmeyer's conduct violated Plaintiffs' constitutional due process rights, and they are not entitled to qualified immunity.

First, as further described below, there are genuine disputes as to whether CDPH published a report with false statements including that Dr. Chaudhry left the operating room during surgery, which would constitute a "stigmatizing statement" given, as described immediately below, it is undisputed the investigation and report led to Dr. Chaudhry's removal from his position at CRMC and substantial damage to his reputation.

Second, there is no genuine dispute that Plaintiffs have suffered the denial of 'some more tangible interest [] such as employment,' or the alteration of a right or status recognized by state law." There is no genuine dispute that Dr. Chaudhry lost his employment and business and cannot obtain affordable malpractice insurance as a result of Defendants Lopez, Campbell, and Kappymeyer's investigation and reports. *See* Doc. 49 ¶¶ 26(c)-(g), 27. Such injuries constitute the denial of a tangible liberty or property interest that triggers the Fourteenth Amendment's due process protections. *See Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (citing *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001)); *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1044 (9th Cir. 1994) ("Discharge assumes a constitutional dimension when the employee has a property interest in continued employment, or a liberty interest in not being defamed, as a result of which she may not be terminated without due process"); *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 975 n.4 (9th Cir. 2002) (California courts have held that "similar due process requirements applicable to private hospitals by statute render 'the essential nature of a qualified physician's right to use the facilities of a hospital . . . a property interest which directly relates to the pursuit of his livelihood.'") (internal citations omitted); *Stretten v. Wadsworth Veterans Hosp.*, 537 F2d 361, 366 (9th Cir. 1976) (citing *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972)) ("[t]he 'liberty interest' is the interest an individual

has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy").

Third, taking the evidence in the light most favorable to Plaintiffs for purposes of summary judgment, Defendants Lopez, Campbell, and Kappmeyer's conduct as detailed below could have caused the alleged deprivation of Plaintiffs' right to due process. As detailed below, there are genuine disputes of material fact regarding whether CDPH's investigation ignored key evidence and whether CDPH's ultimate Deficiency Statements included false information, namely that Dr. Chaudhry left the operating room prior to the completion of the surgery. These undisputed and disputed facts create a triable issue as to whether Defendants Lopez, Campbell, and Kappmeyer's conduct caused a violation of Plaintiffs' due process rights. *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (in Fourth Amendment context, investigator violates a plaintiff's rights when she acts with a "deliberate falsehood or reckless disregard for the truth.").

It is undisputed that Investigator Yussif did not interview Dr. Chaudhry during CDPH's initial investigation, and there are factual disputes regarding the efforts Mr. Yussif made to interview Dr. Chaudhry. *See* Doc. 54 ¶ 6. It is also undisputed that Mr. Yussif did not interview two of the other physicians and the physician's assistant present during the surgery during Mr. Yussif's initial investigation, and there are disputes as to the efforts made to secure their availability for interview. *Id.* There are also disputes as to the extent the Statement of Deficiencies correctly incorporates the findings of the investigation. *See* Doc. 54 ¶ 7 (dispute as whether Mr. Yussif's notes correctly incorporated into ultimate report).

Similarly, it is undisputed that Ms. Campbell did not interview the two other physicians or physician's assistant who were present during the surgery, and there are factual disputes regarding whether they were available for interview. *Id.* ¶¶ 18, 19. There are disputes as to whether Ms. Campbell's interview with Dr. Chaudhry was correctly incorporated into the final report, in particular whether Dr. Chaudhry told Ms. Campbell he left the operating room prior to the stabilization

14

of the patient. Doc. 54 ¶¶ 16-17. There are also disputes as to whether Ms. Campbell and CDPH knew or should have investigated whether there was objective "swipe card data" available that would have shown when exactly Dr. Chaudhry left the operating room. *Id.* ¶ 21. And there is a dispute to what extent Dr. Chaudhry was given an opportunity to submit evidence to Ms. Campbell and CDPH. *Id.*

Likewise, there are genuine disputes as to whether Mr. Lopez sufficiently verified that the State and Federal 2567 Statements of Deficiencies did not contain misstatements of fact. *See* Doc. 54 ¶ 26.

Finally, it is undisputed that Plaintiffs were never given the opportunity to contest the report, and thus did not receive due process for their alleged injury. *See Ulrich*, 308 F. 3d at 982; *Matthews v. Harney County, Or. School Dist. No 4*, 819 F.2d 889, 892 (9th Cir. 1987). Indeed, as mentioned above, it is undisputed that only hospitals may request a hearing to correct deficiencies in CDPH reports, and that Chaudhry was not a licensee afforded with this opportunity. *See* Cal. Health & Safety Code §§ 1280(b)-(c), 1280.5; 42 C.F.R. § 488.331. This lack of recourse for Plaintiffs also makes it more foreseeable that misstatements of fact in 2576 reports could cause injury like that allegedly suffered by Plaintiffs. While CDPH issued an Amended Statement of Deficiencies, the information relied upon in amending did not come from Plaintiffs, and there remains a dispute as to whether the Amended Statement correctly concludes that the original deficiency still stands. Doc. 54 ¶ 31; *see also* Doc. 46, Lopez Decl. ¶ 13. And it is unclear whether the Amended Statement was publicized. Doc. 53, ¶ 31; Doc. 50, ¶ 12.

Viewing all the disputed and undisputed and facts in the light most favorable to the Plaintiffs, it could be concluded that the Defendants Lopez, Campbell, and Kappmeyer knew or had reason to know their investigations were insufficient and Plaintiffs' injuries would be a foreseeable result of publicizing a report with false or incorrect statements. Ultimately, Defendants Lopez, Campbell, and Kappmeyer's argument that their conduct did not violate Plaintiffs' rights assumes their submitted version of the facts as undisputed. But, as noted above, there are genuine disputes of material fact as to whether their conduct amounted to a violation of Plaintiffs' due process rights. "Where the officers' entitlement to

15

qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins*, 350 F.3d at 956; *Ruiz v. Sawaya*, No. 11-CV-03126, 2013 WL 5665404, at *4 (N.D. Cal. Oct. 15, 2013) (denying qualified immunity because "evaluation of plaintiff's excessive force claim depends principally on credibility determinations and the drawing of factual inferences from circumstantial evidence, both of which are the traditional functions of the jury."); *S.T. by & through Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1280 (E.D. Cal. 2018) (citing *Wilkins* and *Ruiz* in denying qualified immunity due to genuine disputes as to whether a constitutional violation occurred). Therefore, Defendants Lopez, Campbell, and Kappmeyer are not entitled to qualified immunity at this stage of the proceeding and summary judgment will be DENIED as to these three defendants.

## V. CONCLUSION AND ORDER

For the reasons stated above, Defendants' summary judgment is GRANTED as to Defendant Eric Creer only, and DENIED as to Defendants Dr. Karen Smith, Steven Lopez, Shirley Campbell, and Deidre Kappmeyer. In addition, as noted above, Defendant Deidre Kappmeyer is deceased. The parties are instructed to take proper steps to either dismiss Ms. Kappmeyer or substitute a proper defendant in her place. *See* Fed. R. Civ. Proc. 25. The matter should be addressed in the parties' joint pre-trial statement.

IT IS SO ORDERED.

Dated: **January 18, 2019**         /s/ Lawrence J. O'Neill
                                    UNITED STATES CHIEF DISTRICT JUDGE