1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERVAIZ A. CHAUDHRY, M.D., et al., | Case No. 1:16-cv-01243-SAB |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL THIRD PARTY COMMUNITY REGIONAL MEDICAL CENTER TO PRODUCE DOCUMENTS |
| v. | |
| SONIA ANGELL, et al., | |
| Defendants. | (ECF Nos. 117, 118, 119, 120) |

Currently before the Court is Sonia Angell, Shirley Campbell, and Steven Lopez' ("Defendants") motion to compel third party Community Regional Medical Center ("CRMC") to produce documents in response to a subpoena. (ECF No. 118.)  The Court heard oral argument on the motion on December 2, 2020.  Counsel Ty Kharazi appeared by video for Plaintiffs Pervaiz Chaudhry and Valley Cardiac Surgery Medical Group, and counsel Diana Esquivel appeared by video for Defendants.  Counsel Karen Ray appeared by video for CRMC.  Having considered the moving, opposition and reply papers, arguments presented at the December 2, 2020 hearing, as well as the Court's file, the Court issues the following order.

## I.

## BACKGROUND

Plaintiff Chaudhry, a cardiothoracic surgeon, performed open heart surgery April 2, 2012, on a patient, Mr. Perez, who went into cardiac arrest and suffered hypoxic brain injury.

On April 11, 2020, the California Department of Public Health ("CDPH") received an anonymous complaint alleging that Plaintiff Chaudhry left the operating room while the patient's chest was still open and left the hospital before the surgery was completed. Around April 16-19, 2012, the CDPH began an investigation into the anonymous complaint. As a result of the investigation, CDPH prepared a statement of deficiencies and plan of correction dated August 23, 2012. The statement of deficiencies found that Plaintiff Chaudhry left the operating room at 11:45 a.m. and that his physician assistant and Dr. Dhillion, the assistant surgeon, sutured the chest closed at approximately 12:00 p.m. and then left the operating room. The report found that Plaintiff Chaudhry left the open heart surgery prior to the closing of the chest and prior to stabilization in violation of hospital medical staff bylaws. The report further found that the hospital failed to ensure that quality medical care was provided to patients and failed to ensure that medical staff bylaws and regulations were enforced when Plaintiff Chaudhry left the open heart surgery prior to closure of the chest. The report was amended on November 25, 2014, to state that Plaintiff Chaudhry left the operating room at about 12:15 p.m.[1]

On June 17, 2016, Plaintiffs Chaudhry and Valley Cardiac Surgery Medical Group filed a complaint in Fresno County Superior Court. (ECF No. 1 at 10-30.) On August 19, 2016, Defendants Karen Smith,[2] Steven Lopez, Eric Creer, Shirley Campbell, and Deidre Kappmeyer removed the action to the Eastern District of California. (ECF No. 1.) Following summary judgment, this action is proceeding against Sonia Angell[3] in her official capacity, Steven Lopez in his individual capacity, and Shirley Campbell in her individual capacity ("Defendants") on allegations of violations of due process.[4] (ECF Nos. 56, 60).

On September 21, 2020, the pretrial conference was held and discovery was reopened for the limited purpose of obtaining documents from CRMC. (ECF No. 114.) On October 5, 2020, Defendants served a notice to the consumer, Mr. Perez, and a subpoena to produce documents on

[1] The facts are taken from the undisputed facts listed in the pretrial order. (ECF No. 88 at 2-6.)

[2] Karen Smith was named as a defendant for the purposes of obtaining injunctive and declaratory relief.

[3] On March 18, 2020, Sonia Angell was substituted for Karen Smith. (ECF No. 101.)

[4] Defendant Kappmeyer has been terminated from this action at the stipulation of the parties. (ECF Nos. 59, 60.)

CRMC.  (ECF No. 118 at 14-20.)  On this same date, Mr. Perez notified defense counsel that he had no objection to the subpoena.  (Id. at 38.)  On October 22, 2020, CRMC served objections to the subpoena.  (Id. at 22-24.)  On October 27, 2020, CRMC served a privilege log.  (Id. at 27-33.)

On November 4, 2020, a motion to compel compliance with the subpoena to CRMC was filed.  (ECF No. 117.)  An amended motion to compel was filed on November 5, 2020.  (ECF No. 118.)  On November 18, 2020, CRMC filed an opposition to the motion to compel.  (ECF No. 119.)  On November 25, 2020, Defendants filed a reply.  (ECF No. 120.)

## II.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  In response to the subpoena, the nonparty must serve objections to the request before the earlier of the time specified for compliance or fourteen days after the subpoena is served.  Fed. R. Civ. P. 45(d)(2)(B.)  If an objection is made, the serving party may move for an order compelling compliance in the court for the district where compliance is required.  Fed. R. Civ. P. 45(b)(1)(B(i).

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34.  Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.").  Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26.

Under the Federal Rules of Civil Procedure,

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Although relevance is broadly defined, it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).  While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents. Dart Industries Co., Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980).  In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case. Dart Industries Co., Inc., 649 F.2d at 680.  "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Gonzales, 234 F.R.D. at 680.

### III.

### ANALYSIS

Defendants' subpoena at issue here requests "All of the Community Regional Medical Center Medical Executive Committee's documents and electronically-stored information, including but not limited to, notes, minutes, findings, correspondence, reports, evaluations, corrective action, disciplinary action, and/or action plans, related to the peer review of Perviaz [sic] A. Chaudhry, M.D., as a result of or in connection with the April 2, 2012 surgery of Patient Silvino Perez."  (ECF No. 118 at 20.)

CRMC's objection states, "Objection is made on the grounds that this request seeks disclosure of documents that are protected by California Evidence Code section 1157, et seq.; federal common law hospital peer review privilege (see Whitman v. Whitman v. United States, 108 F.R.D. 5 (D.N.H. 1985); Weekoty v. United States, 30 F.Supp.2d 1343 (D.N.M. 1998)); attorney-client privilege and work product doctrine, the right to privacy, and any other applicable

1  privilege or immunity."  (Id. at 23.)

2      Defendants assert that CRMC has objected on the grounds of state law privileges that are

3  not binding on federal courts, that the privilege log produced lacks sufficient information to

4  allow Defendants to challenge its claim of attorney-client or work product, and that the privacy

5  objections should be overruled.  Defendants request that CRMC be ordered to comply with the

6  subpoena to produce the peer-review file of the incident involving Plaintiff Chaudhry.

7      Third party CRMC opposes the motion on the ground that the peer review is protected by

8  the peer review privilege, self-critical analysis privilege, attorney-client privilege, work product

9  doctrine, and the right to privacy under the California Constitution.

10      Defendants reply that the peer review and self-critical analysis privileges are not

11  recognized by the Ninth Circuit.  Defendants continue to assert that the privilege log is so

12  generalized and vague that the issues of attorney-client privilege, work product, and privacy

13  cannot be adequately assessed.

14      **A.**    **Peer Review Privilege**

15      The parties dispute whether California's peer review privilege would apply in this federal

16  action.  Defendant argues that privilege in this federal case is governed by federal common law

17  and the Ninth Circuit addressed and rejected the peer review privilege in Agster v. Maricopa

18  County, 422 F.3d 836, 839 (9th Cir. 2005), and Leon v. Cty. of San Diego, 202 F.R.D. 631, 637

19  (S.D. 2001).  Defendants contend that CMRC is relying on out of circuit cases and does not

20  acknowledge that there is a split in federal courts on whether a medical peer review privilege

21  exists under federal common law.  Defendants assert that because the Ninth Circuit has rejected

22  the existence of a federal common law privilege there is no merit to CRMC's objection on the

23  ground and applying the privilege would conflict with authority within this circuit.

24      CRMC counters that, in the interest of comity, this court should apply California's peer

25  review privilege.  CRMC asserts that Agster does not unequivocally support Defendants'

26  position because the Agster court expressly left the door to the privilege open in other contexts.

27  CRMC argues that in Leon the privilege was rejected because section 1157 did not apply to the

28  records and therefore Leon is distinguishable.

Defendants reply, that the cases CRMC relies on to assert that a peer review privilege should be recognized were decided prior to Agster, and courts in the Ninth Circuit have continued to hold that the peer review privilege is not recognized in this circuit.  Further, Defendants argue that this is not a medical malpractice action, and any policy considerations related to medical malpractice suits is not applicable here.

The Supreme Court has found that "testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence' " and "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " Trammel v. United States, 445 U.S. 40, 50–51 (1980).  Such privileges "are not lightly created or expansively construed, for they are in derogation of the search for truth." Trammel, 455 U.S. at 51 (quoting United States v. Nixon, 418 U.S. 683, 710 (1974)).  Therefore, the federal court "should not create and apply a new privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.' " Trammel, 445 U.S. at 51.  Further, "[t]he Supreme Court has been especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself" "because balancing conflicting interests is a legislative function." Id. (citing University of Pa. v. EEOC, 493 U.S. 182, 189 (1990).

CRMC cites several out of circuit cases that have recognized the peer review privileges. However, no circuit court case has recognized such a privilege, Schlegel v. Kaiser Found. Health Plan, No. CIV 07-0520 MCE KJM, 2008 WL 4570619, at *4 (E.D. Cal. Oct. 14, 2008), and the vast majority of federal courts, including the Ninth Circuit, "that have considered the issue have rejected creation of a federal common law medical peer review privilege[,]" Williams v. Univ. Med. Ctr. of S. Nevada, 760 F.Supp.2d 1026, 1031 (D. Nev. 2010) (collecting cases).

In Agster, the parents of a detainee filed suit after he went into respiratory distress and attempts to resuscitate him were unsuccessful.  442 F.3d at 837.  He was transported to the hospital where he was placed on life support and eventually pronounced dead. Id.  The jail's

policies and the National Commission on Correctional Health Care Standards for Health Services in Jails required that a mortality review be completed.  Id. at 838.  The report was intended to be and was kept confidential.  Id.  After the state court action was removed to federal court, the plaintiffs sought discovery of the mortality review and the County opposed the discovery on the grounds of the state law privilege.  Id.  The trial court ruled "that no federal peer review has been adopted in the Ninth Circuit[,]" and overruled the claim of privilege ordering production of the document.  Id.

On appeal, the Ninth Circuit considered that "Arizona recognizes the privilege attached to peer review of 'the professional practices within the hospital or center for the purposes of reducing morbidity and mortality and for the improvement of the care of patients provided in the institution.' "  Agster, 422 F.3d at 839.  They recognized that no case in this circuit has recognized the privilege, but that a new privilege could be created as a matter of federal common law.  Id.  The Ninth found that it was "constrained by two considerations, one general and the other particular to this case."  Id.

> We must be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself."  Univ. of Pennsylvania v. EEOC, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).  The Health Care Quality Improvement Act of 1986 granted immunity to participants in medical peer reviews, but did not privilege the report resulting from the process.  See 42 U.S.C. §§ 11101–11152.  Congress amended the act in 1987 to state that "nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law."  Pub.L. No. 100–177, § 402(c).  As Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication, there exists a general objection to our doing so.
>
> The particular objection is that the privilege is sought to protect a report bearing on the death of a prisoner.  Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered.  In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided.  Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege.  Accordingly, we are unwilling to create the privilege in this case.

Agster, 422 F.3d at 839.  The Court found that the federal law of privilege, not state law

1  privilege, applied.  <u>Id.</u>

2      While CRMC argues that this action is distinguishable because <u>Agster</u> was decided in the

3  context of the death of a prisoner, the Ninth Circuit's analysis that Congress has twice had

4  occasion institute a privilege for peer review under the Health Care Improvement Act but did not

5  do so applies equally in this action and the Supreme Court has held that where "where it appears

6  that Congress has considered the relevant competing concerns but has not provided the privilege

7  itself" the court should be especially reluctant to recognize a privilege in the area "because

8  balancing conflicting interests is a legislative function."  <u>Trammel</u>, 445 U.S. at 51.  Moreover,

9  here, the peer review is not sought in relation to a medical malpractice suit in which the

10  treatment provided by Plaintiff Chaudhry is at issue, but in the context of an investigation into

11  whether the hospitals bylaws and regulations were violated.  In this instance, the public interest

12  is greater than in a malpractice suit in which the issue is the treatment provided to the patient.

13      In <u>Leon</u>, the trial court rejected the argument that the federal court should apply the state

14  law privilege as a matter of comity.  <u>Leon</u>, 202 F.R.D. at 635.  This is a federal civil rights case,

15  and the privilege issues are governed by Federal Rule of Evidence 501, which declares, "the

16  privilege of a witness, person, government, State or political subdivision shall be governed by

17  the principles of the common law as they may be interpreted by the courts of the United States in

18  the light of reason and experience."  <u>Id.</u>  Rule 501 provides the federal court with some

19  flexibility in determining the privileges that should be recognized in a specific case.  <u>Id.</u>

20      Rule 501 has been recognized as allowing the adoption of existing state
21  evidentiary codes to govern federal cases where the state rules are not in conflict
    with federal rules.  <u>Pagano v. Oroville Hosp.</u>, 145 F.R.D. 683 (E.D. Cal. 1993),
22  sets forth the authority behind this policy:

23      "[A]s a matter of comity, federal courts should attempt to ascertain what interests
    inspire relevant state doctrine and should take into account the views of state
24  authorities about the importance of those interests."  <u>Kelly v. City of San Jose</u>,
    114 F.R.D. 653, 656 (N.D. Cal. 1987).  " 'A strong policy of comity between state
25  and federal sovereignties impels federal courts to recognize state privileges where
    this can be accomplished at no substantial costs to federal substantive and
26  procedural policy.'  <u>United States v. King</u>, 73 F.R.D. 103, 105 (E.D.N.Y. 1976).
    And where a 'state holds out the expectation of protection to its citizens, they
27  should not be disappointed by a mechanical and unnecessary application of the
    federal rule.'  <u>Lora v. Board of Education</u>, 74 F.R.D. 565 (E.D.N.Y. 1977)."  <u>Id.</u>
28  at 688 (quoting <u>Memorial Hospital For McHenry County v. Shadur</u>, 664 F.2d
    1058, 1061 (7th Cir. 1981)).

Leon, 202 F.R.D. at 635.  This Court agrees with the findings of Leon and other federal courts that section 1157 "conflicts with the more liberal policy of discovery inherent in the Federal Rules."  Id. at 636; see also Burrows v. Redbud Cmty. Hosp. Dist., 187 F.R.D. 606, 609 (N.D. Cal. 1998) ("such absolute protection against discovery is inconsistent with the flexibility of federal privilege law").

CRMC cites to Jaffee v. Redmond, 518 U.S. 1 (1996), to argue that the peer review privilege should be recognized because a peer review privilege exists in every state.  In Jaffe, the issue raised was whether the psychotherapist privilege should be recognized under Rule 501 of the Federal Rules of Evidence.  518 U.S. at 4.  Because there was a conflict among the circuits on whether such a privilege should be recognized, the Supreme Court granted cert.  Id. at 7.  The Court found that like the spousal and attorney-client privilege, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust."  Id. at 8.  In order for psychotherapy to be effective, there must exist an atmosphere of confidence and trust so that the patient would be willing to make frank and complete disclosure of facts, emotions, memories, and fears.  Id.  Due to the sensitive nature of the issues for which individuals consult psychotherapists, the disclosure of confidential communications made during counseling sessions could cause embarrassment or disgrace and the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.  Id. at 10.  Further, the Judicial Conference Advisory Committee had recommended that the privilege be recognized as part of the proposed Federal Rules of Evidence in 1972 because the psychotherapist's ability to help her patient is completely dependent on the patient's willingness and ability to talk freely.  Id. at 10.  The Court also found that "the psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem.  The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."  Id. at 11.

While the Jaffee Court did address that all fifty states had enacted some type of psychotherapist privilege, Jaffee, 518 U.S. at 12, this is only one of the factors that was considered and the public policy and confidentiality concerns that existed in Jaffee for patients to

1    seek treatment for their mental health issues are not present in the peer review context. Further,

2    this court is not persuaded by the argument that disclosure of the peer review documents will

3    chill the willingness of individuals to participate in and impede the peer review process such that

4    the documents should not be produced. See Avila v. Mohave Cty., No. 3:14-CV-8124-HRH,

5    2015 WL 6660187, at *4 (D. Ariz. Nov. 2, 2015); NLRB v. Alves, No. EDCV130685VAPSPX,

6    2013 WL 12151415, at *2 (C.D. Cal. June 5, 2013); Schlegel, 2008 WL 4570619, at *4-5.

7    Additionally, in the context of the psychotherapist privilege, the Judicial Conference Advisory

8    Committee had recommended that the privilege be recognized, while here Congress has twice

9    had the opportunity to recognize the peer review privilege and has not done so. See Teasdale v.

10   Marin Gen. Hosp., 138 F.R.D. 691, 694 (N.D. Cal. 1991) ("Congress spoke loudly with its

11   silence in not including a privilege against discovery of peer review materials in the HCQIA.")

12       In the Ninth Circuit, district courts have consistently followed Agster and found that no

13   federal peer review privilege exists. Roberts v. Legacy Meridian Park Hosp., Inc., 299 F.R.D.

14   669, 673 (D. Or. 2014); Love v. Permanente Med. Grp., No. C-12-05679 DMR, 2013 WL

15   4428806, at *2 (N.D. Cal. Aug. 15, 2013); .  The state peer review privilege conflicts with the

16   liberal policy of discovery inherent in the federal rules, and this Court declines to recognize and

17   create a new privilege in this action.  The Court finds that the state peer review privilege is not

18   applicable in this action and there is no federal common law peer review privilege recognized in

19   this circuit. See Toranto v. Jaffurs, No. 16CV1709-JAH (NLS), 2017 WL 11420585, at *1 (S.D.

20   Cal. Dec. 29, 2017) (overruling objections based on state and federal peer review privilege).  As

21   the Court declines to recognize a new peer review privilege, CRMC's objection on the basis of

22   peer review privilege is overruled.

23       **B.      Self-Critical Analysis Privilege**

24       CRMC also asserts that the information should be protected by the self-critical analysis

25   privilege under federal law because they are the type of post-accident investigation that was

26   contemplated in Dowling v. Am. Hawaii Cruises, Inc., 971 F.2d 423 (9th Cir. 1992), and

27   applying the privilege would be consistent with the goal of Federal Rule of Evidence 407 which

28   precludes the use at trial of subsequent remedial measures.  Notably, CRMC does not cite a

1  single case in this circuit that has held a federal self-critical analysis privilege exists.

2        Defendant counters that CRMC did not raise the self-critical analysis privilege in their

3  objection and has waived the privilege.  Defendant further argues that no such privilege is

4  recognized in the Ninth Circuit.  Initially, the Federal Rules of Civil Procedure provide a party

5  must specify the grounds for an objection, and that an objection to a request for production "must

6  state whether any responsive materials are being withheld on the basis of that objection."  Fed.

7  R. Civ. P. 34(b)(2)(B)(C).  However, CRMC did not make an objection on the ground of the self-

8  critical analysis privilege in the objections to the subpoena.  (See ECF No. 118 at 23.)

9  Therefore, the objection is deemed waived.  To the extent that an argument can be had that

10  CRMC has not waived the privilege, the Court will address the merits of the privilege.

11        In Dowling, the trial court denied a motion to compel a discovery request which was

12  interpreted to be seeking the safety committees' minutes.  971 F.2d at 424.  The Ninth Circuit

13  considered that it had not previously considered this "so-called privilege of self-critical

14  analysis," but that other courts which applied the privileged required the party asserting the

15  privilege to demonstrate that the material to be protected satisfies at least three criteria: "first, the

16  information must result from a critical self-analysis undertaken by the party seeking protection;

17  second, the public must have a strong interest in preserving the free flow of the type of

18  information sought; finally, the information must be of the type whose flow would be curtailed if

19  discovery were allowed."  Id.  Further, the Court found that "no document will be accorded a

20  privilege unless it was prepared with the expectation that it would be kept confidential, and has

21  in fact been kept confidential."  Id.  However, the Court noted that neither the Supreme Court nor

22  the circuit courts have "definitively denied the existence of such a privilege, nor accepted it and

23  defined its scope.  Rather, when confronted with a claim of the privilege, they have refused on

24  narrow grounds to apply it to the facts before them."  Id. at 426 n.1.  The Ninth Circuit has not

25  recognized a self-critical review privilege.  Union Pac. R. Co. v. Mower, 219 F.3d 1069, 1076

26  n.2 (9th Cir. 2000) (citing Dowling, 971 F.2d at 425-26); Griffith v. Davis, 161 F.R.D. 687, 701

27  (C.D. Cal. 1995).

28        Further, courts in this circuit have repeated rejected the argument that the "self-critical

1  review" privilege would apply to preclude access to peer review documents.  See Pagano, 145

2  F.R.D. at 692 ("Observing the reluctance of the Supreme Court to create privileges, and noting

3  that the weight of federal authority has not recognized either a peer review or self-critical

4  analysis privilege, this court will not recognize either privilege in the federal common law, at

5  least in settings where the peer review or self-analysis themselves are under attack."); Guzman-

6  Ibarguen v. Sunrise Hosp. & Med. Ctr., No. 2:10-CV-1228-PMP-GWF, 2011 WL 2149542, at

7  *8 (D. Nev. June 1, 2011) (declining to recognize a federal privilege relating to a hospital's

8  investigation concerning the adequacy of medical care provided to a particular patient); see also

9  Roadhouse v. Las Vegas Metro. Police Dep't, No. 2:09-CV-00033-JCMLRL, 2010 WL

10  3738029, at *2 (D. Nev. Sept. 20, 2010) (Ninth Circuit does not recognize the self-critical

11  analysis privilege); Franklin v. Out W. Express, LLC, No. 3:17-CV-05698-RBL, 2019 WL

12  1958496, at *3 (W.D. Wash. May 2, 2019) (Ninth Circuit has declined to recognize the

13  privilege); Noble v. City of Fresno, No. 116CV01690DADBAM, 2018 WL 1381945, at *8 (E.D.

14  Cal. Mar. 19, 2018) (critical self-analysis privilege not recognized as a valid bar to disclosure in

15  the Ninth Circuit).

16        The Court finds that, to the extent that the privilege was not waived by the failure to

17  assert it in objections to the subpoena, there is no federal self-critical review privilege that would

18  exist to preclude access to the peer review documents, and CMRC's objection on this ground is

19  overruled.

20        **C.        Attorney-Client Privilege and Work Product Doctrine**

21        Defendant contends that to withhold documents based on attorney-client privilege the

22  party opposing disclosure is required to describe the nature of documents to enable the party

23  seeking discovery to assess the claim of privilege and CRMC has not done so here.  Defendant

24  argues that there is no basis to withhold the documents based on CRMC's failure to properly

25  describe the documents since they have been aware since at least February 2020 that the

26  documents were going to be subpoenaed and because much of the documents have likely been

27  disclosed in this action and the malpractice action that was pending in Fresno Superior Court.

28        CRMC counters that a privilege log has been provided that sets forth the applicable

privileges and that some of the documents are entitled to attorney-client privilege or are protected by the work product doctrine.  CRMC requests an *in camera* review to preserve the confidentiality of the documents prior to a ruling on these privileges.

Defendant replies that the privilege log is so generalized and vague that it is unable to determine if attorney-client privilege would apply to the documents.

1.    Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  In the Ninth Circuit, the attorney-client privilege is applied only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client."  Tornay v. United States, 840 F.2d 1424, 1428 (9th Cir. 1988).  The burden of establishing the relationship and privileged nature of the communication is on the party asserting the attorney-client privilege.  Richey, 632 F.3d at 566 (citing United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)).  Communications are entitled to protection by the attorney-client privilege where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."  Richey, 632 F.3d at 566 (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)).  "Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject."  Richey, 632 F.3d at 566 (citing Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)).  "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. "  Richey, 632 F.3d at 566.

In their privilege log, CRMC identified the following documents to which the attorney-client privilege and work product doctrine was claimed:

| Document | Prepared by: |
| --- | --- |
| 4/2/12 MTP Blood Bank Committee Report | MTP Committee |

| | |
|---|---|
| 4/4/12 Peer Review Case Rating Form | Risk Management |
| 4/4/12 Peer Review Summary | Chairman of Surgery Committee |
| 8/14/12 Written communication to MEC from attorney | Attorney |
| 9/6/12 Written communication from attorney to CMC attorney | Attorney |
| 9/13/12 Written communication to President of Medical Staff | Attorney |

The Court shall first consider if the attorney-client privilege should preclude disclosure of the documents.

Rule 26 of the Federal Rules of Civil Procedure provides, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The Ninth Circuit has held that a privilege log is sufficient to properly assert a privilege, but has not explicitly held what is necessary to show a privilege or work product protection. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1148 (9th Cir. 2005) (citing Dole v. Milonas, 889 F.2d 885, 890 (9th Cir. 1989); and United States v. Corporation (In re Grand Jury Investigation), 974 F.2d 1068, 1071 (9th Cir. 1992). But it is well established that general boilerplate objections are not a proper method of asserting the privilege; and there are a variety of methods, such as in camera review and redactions of privileged material, which can be invoked to convey information about the content of the allegedly privileged material, which a boilerplate objection does not do. Burlington N. & Santa Fe Ry. Co., 408 F.3d at 1148.

A privilege log has been held sufficient to establish the attorney-client privilege where it identifies "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the

1   document was generated, prepared, or dated."  Skyline Wesleyan Church v. California Dep't of

2   Managed Health Care, 322 F.R.D. 571, 584 (S.D. Cal. 2017).  The privilege log here is

3   insufficient to identify the nature of the document, who created the document, all persons who

4   have received or been sent the document or have been furnished with or informed of the

5   documents substance.

6        Accordingly, CRMC was provided with an opportunity to address these issues at the

7   December 2, 2020 hearing.

8        **a.    Attorney Communication**

9        At the December 2, 2020 hearing, the Court inquired into the three entries listed as

10   attorney communication.  The August 14, 2012 and September 13, 2012, communications were

11   asserted to be from CRMC's general counsel to the Medical Executive Committee and the

12   President of Medical Staff and the September 6, 2012 communication is a letter from outside

13   counsel to the hospital's general counsel regarding the incident.  Counsel asserted that the three

14   letters were attorney-client privileged and addressed the peer review of Plaintiff Chaudhry and

15   updates on the status of the review.  While CRMC has not provided declarations to establish that

16   the communications were for the purpose of providing legal advice, given the totality of the

17   circumstances, the Court finds that CRMC has made a sufficient showing that attorney client

18   privilege would apply to the 8/14/12 and 9/13/12 written communication from their attorney to

19   the MEC and the President of Medical Staff and the 9/6/12 written communication from outside

20   counsel.  "The attorney-client privilege protects confidential disclosures made by a client to an

21   attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such

22   disclosures."  Bauer, 132 F.3d at 507 (quoting United States v. Chen, 99 F.3d 1495, 1501 (9th

23   Cir. 1996).

24        CRMC's objection on the ground of attorney-client privilege is sustained as to the

25   8/14/12, 9/6/12, and 9/13/12 communications from attorneys and these documents shall not be

26   produced.

27        **b.    4/2/12 MTP Blood Bank Committee Report**

28        CRMC has not established that the Blood Bank Committee Report was a confidential

1    document that was created in order to obtain legal advice.  Rather, based on the representations

2    at the November 2, 2020 hearing, the 4/2/12 MTP Blood Bank Committee Report was created at

3    or around the time of the incident and was provided after the investigation was instigated as part

4    of the risk review process.

5        The  attorney-client  privilege  does  not  protect  the  facts  that  are  included  in  the

6    communication, but the communication itself and an employee cannot invoke privilege to any

7    relevant fact within his knowledge merely because he incorporated a statement of such fact into

8    his communication to his attorney.  Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 626 (D. Nev.

9    2013).  Further, a client cannot shield information by merely providing it to their attorney.

10   Phillips, 290 F.R.D. at 630.  In that situation, the court must consider whether the document

11   already existed and was sent to the attorney for review or was prepared at the direction of

12   counsel.  Id. at 632.  CRMC has not met its burden to show that attorney-client privilege would

13   apply to the Blood Bank Committee Report and the objection on this ground is overruled.[5]

14       **c.    4/4/12 Peer Review Case Rating Form and Peer Review Summary**

15       CMRC also claims that attorney-client privilege would protect the April 4, 2012 Peer

16   Review Case Rating Form and Peer Review Summary from disclosure.  CRMC has provided no

17   information by which the Court could determine that these documents were entitled to attorney-

18   client privilege.

19       CRMC relies on California cases to argue that the risk managers are de facto members of

20   the legal department and therefore the documents are protected by attorney-client privilege.  But

21   even an attorney that acts as a claims adjuster or claims manager cannot later claim attorney-

22

23   [5] At the December 2, 2020 hearing, counsel for CRMC also contended that the Blood Bank Committee Report was

24   not relevant to the claims in this action.  As stated infra, the Federal Rules of Civil Procedure provide a party must
     specify the grounds for an objection, and that an objection to a request for production "must state whether any
     responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(B)(C).  However,

25   there was no objection on the grounds of relevancy raised in the objections to the subpoena or in the opposition to
     the motion to compel.  (See ECF No. 118 at 23; ECF No. 119.)  Objections that are not raised in the response to the

26   discovery request will not be considered.  Ramirez v. Cty. of Los Angeles, 231 F.R.D. 407, 410 (C.D. Cal. 2005).
     Further, relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other
     matter that could bear on, any issue that is or may be in the case.  Oppenheimer Fund, Inc., 437 U.S. at 351.  Here,

27   one of the issues is whether the report fraudulently stated that Plaintiff Chaudhry left the hospital prior to Mr. Perez
     being stabile following surgery and the report could contain information relevant to timing that would address this

28   issue.

1  client privilege for that work. <u>Bronsink v. Allied Prop. & Cas. Ins.</u>, No. 09-751 MJP, 2010 WL

2  786016, at *1 (W.D. Wash. Mar. 4, 2010). In <u>Upjohn</u>, the Supreme Court held that in order for

3  the attorney-client privilege to apply, the communications at issue must have been made for the

4  purpose of securing legal advice. 449 U.S. at 394-95. To be protected by attorney-client

5  privilege it is the purpose for which the document was created, not who created the document,

6  that determines if it is privileged.

7         Here, it is clear that the peer-review was instituted within days of the date of Mr. Perez's

8  surgery, but CRMC has not submitted any declarations or evidence that would establish that this

9  review was for the purpose of obtaining legal advice. CRMC has not met its burden to

10  demonstrate that the April 4, 2012 peer review documents are protected by attorney-client

11  privilege. CRMC's objection on the ground of attorney client privilege is overruled.

12         2.    Work Product Doctrine

13         CRMC also asserts that these documents are protected by the work product doctrine.

14  "The work-product doctrine protects 'from discovery documents and tangible things prepared by

15  a party or his representative in anticipation of litigation.' " <u>Richey</u>, 632 F.3d at 567 (quoting

16  <u>Admiral Ins. Co. v. U.S. Dist. Ct.</u>, 881 F.2d 1486, 1494 (9th Cir. 1989)). The protection

17  provided by the work product doctrine is waivable. <u>Richey</u>, 632 F.3d at 567. To be entitled to

18  protection by the doctrine, documents "must (1) be 'prepared in anticipation of litigation or for

19  trial' and (2) be prepared 'by or for another party or by or for that other party's representative.' "

20  <u>Richey</u>, 632 F.3d at 567 (quoting <u>In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.</u>

21  <u>(Torf)</u>, 357 F.3d 900, 907 (2004)).

22         Courts distinguish between two types of documents in applying the work product

23  doctrine: single purpose documents and dual purpose documents. <u>Toranto</u>, 2018 WL 3546453,

24  at *2. "Single purpose documents are documents that are prepared 'exclusively in anticipation of

25  litigation' and serve no other purpose." <u>Id.</u> (quoting <u>Torf</u>, 357 F.3d at 907). Where a document

26  was not prepared exclusively for litigation, but serves a dual purpose, the "because of" test is

27  used. <u>Richey</u>, 632 F.3d at 567-68. "Dual purpose documents are deemed prepared because of

28  litigation if 'in light of the nature of the document and the factual situation in the particular case,

the document can be fairly said to have been prepared or obtained because of the prospect of litigation.' " Id. at 568 (quoting Torf, 357 F.3d at 907).  In applying the "because of" standard, the court must consider the totality of the circumstances "and determine whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.' " Richey, 632 F.3d at 568 (quoting Torf, 357 F.3d at 908).  Neither of the parties has addressed whether this these are single purpose or dual purpose documents and, if a dual purpose document, whether the because of test has been met.

Here, the April 2, 2012 MTP Blood Bank Committee Report appears to have been prepared in the ordinary course of business and there is nothing to indicate that it was prepared in anticipation of litigation.  "The work product doctrine does not protect materials assembled in the ordinary course of business." Griffith, 161 F.R.D. at 698.  "Documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protectable as work product." Callwave Commc'ns, LLC v. Wavemarket, Inc., No. C 14-80112 JSW (LB), 2015 WL 831539, at *3 (N.D. Cal. Feb. 23, 2015) (citations omitted).  Because CRMC has not met its burden to show that the document was prepared in anticipation of litigation, it is not protected by the work product doctrine.

The April 4, 2012 Peer Review Case Rating Form and Peer Review Summary were prepared within days of the April 2, 2012 surgery and there is no evidence that any litigation had been instituted or threatened at this time.  CRMC has not presented any evidence as to why the peer review was instituted.  While it may be normal course of business to begin a peer review where there are complications that cause severe injury such as occurred here, it may be that the peer review was to determine whether its bylaws and state regulations had been violated because their licensing could be effected.  Although the current complaint contains allegations that an anonymous report was received that Plaintiff Chaudhry had left the hospital and allowed his physician's assistant to close after open heart surgery, and that the patient had gone into cardiac arrest resulting in a hypoxic brain injury, CRMC has not demonstrated that the peer review process was instigated because of the prospect that litigation would ensue.

In Toranto, the court was considering whether a third party review conducted to provide a

1   medical evaluation of a physician's technical skills in connection with his then-pending
2   application for privileges at the hospital was entitled to protection under the work product
3   doctrine.  2018 WL 3546453, at *2.  The hospital argued that the review had been initiated at the
4   request of counsel who regularly gave input on the evaluation of applicants and the peer review
5   process and provided legal advice and direction to the committee on evaluation of physicians.
6   Id.  The court found that the party asserting the privilege had not pointed to any legal advice that
7   the third party reviewer was providing or any legal advice that the attorney provided based on the
8   third party report.  Id.  "As the Richey case itself indicates, where the advice sought is not of a
9   legal nature, the fact that an attorney may have ordered the outside consultation, as the attorney
10  did in Richey, is of no moment."  Id.  The court found that the attorney-client privilege did not
11  apply, but it was a closer question as to whether the work product doctrine would apply to the
12  review.  Id. at *2-3.

13       The documents were dual purpose documents and clearly served the purpose of providing
14  medical information to the credentialing process.  Id. at *3.  However, there was litigation that
15  was pending at the time that the review was introduced and conducted, there was likely some
16  litigation use for the documents as well and they were analyzed under the "because of" test.  Id.
17  "[C]ourts examining this issue seem to draw a line at whether it can be said that there is an
18  "independent purpose ... truly separable from the anticipation of litigation."  Id. (quoting Torf,
19  357 F.3d at 909).  The court found that the third party review served a separate enough purpose,
20  apart from litigation, considering that the credentialing process started when the doctor had
21  applied for privileges months before the litigation had been filed.  Toranto, 2018 WL 3546453,
22  *3.  The Court found that "the retention of the third party reviewer was for the primary purpose
23  of evaluating the soundness of [the doctor's] treatment history and [the hospital] has put forth no
24  evidence that the review and/or report would have been conducted or written any differently if
25  not for the litigation.  Id.

26       Finally, the court found that the fact that in-house counsel was involved was not
27  conclusive because in Phoenix Technologies a similar argument that documents should be
28  protected because "in-house counsel provided 'continual' legal advice and direction regarding

the [ ] dispute," had been rejected finding that this involvement "does not automatically denote that a document is entitled to protection." <u>Toronto</u>, 2018 WL 3546453, at *4 (quoting <u>Phoenix Techs. Ltd. v. VMware, Inc.</u>, 195 F.Supp.3d 1096, 1105 (N.D. Cal. 2016)).   The attorney involvement had only been described in general and vague terms and that "[l]ack of attorney involvement in documents 'is a useful sign, in conjunction with other indicators, that they are not protected work product.' " <u>Toronto</u>, 2018 WL 3546453, at *4 (quoting <u>Phoenix Techs. Ltd.</u>, 195 F.Supp.3d at 1106).

Similarly, here, CRMC has not presented any evidence that counsel was involved in the peer review process other than vague and general references to communications after the peer review documents and summary were completed.   CRMC has not presented any evidence that counsel was involved in the decision to conduct the peer review.   Nor has any information been provided as to whether it is normal course of business to conduct a peer review under the circumstances that occurred on April 2, 2012, or if there was a specific circumstance relevant to this incident that would have prompted the peer review process.   Further, CRMC stated that the peer review process was determining the competence of Plaintiff Chaudhry which is similar to the review that was conducted in <u>Toronto</u>.   It is the burden of the party claiming protection because of work product to prove applicability of the doctrine.   <u>Colonies Partners, L.P. v. Cty. of San Bernardino</u>, No. 518CV00420JGBSHKX, 2020 WL 5846477, at *2 (C.D. Cal. Jan. 24, 2020); <u>McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.</u>, 333 F.R.D. 638, 641 (D. Or. 2019); <u>King Cty. v. Viracon, Inc.</u>, No. 2:19-CV-508-BJR, 2020 WL 6270799, at *2 (W.D. Wash. Oct. 26, 2020).   CRMC has not met their burden of demonstrating that the April 4, 2012 peer review documents are protected by the work product doctrine.

Finally, this action is proceeding on a stigma plus claim and Plaintiff Chaudhry contends that he was harmed because the State report caused him to lose medical contracts and his position as medical director.   <u>See</u> Order Re Motions *In Limine*, pp. 27-28, ECF No. 97.) Whether Plaintiff Chaudhry's alleged harm was caused by Defendants' publication of the report or by CRMC's own investigation into the incident is highly relevant to Defendants' defense that they did not cause the harm alleged.   The materials that Defendants are seeking are not the

1   opinion or mental impressions of the attorneys, but the factual information and conclusions that

2   were developed during CRMC's investigation into the incident.  Such ordinary work product

3   "may be discovered if they are relevant and 'the party shows that it has substantial need for the

4   materials to prepare its case and cannot, without undue hardship, obtain their substantial

5   equivalent by other means.' "  Kandel v. Brother Int'l Corp., 683 F.Supp.2d 1076, 1084 (C.D.

6   Cal. 2010) (quoting Fed.R.Civ.P. 26(b)(3)(A)(i)-(ii)).  Here, Defendants have a substantial need

7   for the information to support their defense that it was CRMC's investigation and not the State

8   report that was the cause of Plaintiff Chaudhry's harm and CRMC has not demonstrated that this

9   material or their substantial equivalent can be obtained by other means.

10          CRMC's objection on the ground of work product is overruled.

11          **D.      Right to Privacy**

12          While recognizing that there is a right to privacy, Defendants contend that CRMC has

13   failed to specify whose privacy rights will be infringed upon with disclosure of the documents.

14   Defendant argues that the Perez family, whose medical information is at issue, has no objection,

15   nor has Plaintiff objected to the disclosure.  Further, Defendants contend that the Perez family

16   has waived any privacy objection by filing the state malpractice suits and Plaintiffs have waived

17   any privacy objection by filing this lawsuit.  Defendants state that this action arises from the

18   investigation into whether CRMC's hospital bylaws had been violated by the April 2, 2012

19   operation of Mr. Perez.  That investigation led to the published report that Plaintiffs contend

20   contains false information and stigmatizing statements.  CRMC started an investigation into the

21   case within a couple hours of the operation.  Defendants argue that this is not standard procedure

22   as incidents would usually be referred to risk management before the peer review process starts.

23   Defendants contend that statements would have been taken by CRMC within days of the incident

24   while the witnesses recollection was fresh as opposed to the statements taken by Defendant

25   Campbell months later.  Also, the statements and declarations that were collected by CRMC

26   were not made available to the DPH investigators.  Further, Defendants contend that the CRMC

27   investigation may include statements that are inconsistent with statements made to DPH

28   investigators.  Defendants argue that the peer review file will support their contention that there

1  was an adequate investigation after the incident, the report accurately reported the information

2  provided by the witnesses interviewed, and any errors in the report were inadvertent or

3  immaterial.   Therefore, Defendants contend that the need for the material outweighs any

4  expectation of privacy that may remain in the peer review file.

5  CRMC opposes the motion on the ground that the records contain the names of third

6  parties, including physicians, healthcare providers and patients, whose privacy rights will be

7  infringed if disclosure is ordered.   CRMC contends that any disclosure should be subject to a

8  protective order.

9  Defendants reply that they cannot adequately address the issue of privacy because the

10 privilege log is so generalized and vague that they are unable to determine whether any privacy

11 rights are implicated.   However, Defendants assert they do not seek medical information of other

12 patients referenced in the peer review files and the subpoena is only directed to the documents

13 related to Plaintiff Chaudhry's April 2, 2012 operation of Mr. Perez and they are agreeable to

14 excluding information that does not relate to the April 2, 2012 operation and to a protective order

15 as along as they are able to use relevant evidence from the peer review file at trial.

16 CRMC objects on the ground that California recognizes a constitutional right to privacy.

17 Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in

18 response to discovery requests.   Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995).

19 Although federal law controls in this civil rights action, the court may also consider state law as

20 to the right of privacy to the extent it is not inconsistent with federal law.   McClure v. Prisoner

21 Transportation Servs. of Am., LLC, No. 118CV00176DADSKO, 2020 WL 1182653, at *2 (E.D.

22 Cal. Mar. 12, 2020).   The Ninth Circuit has held that Article I, section I of the California

23 Constitution contains an explicit guarantee of the right of "privacy" which is broader and more

24 protective in scope than that of the United States Constitution.[6]  Leonel v. Am. Airlines, Inc., 400

25 F.3d 702, 711 (9th Cir. 2005), opinion amended on denial of reh'g, No. 03-15890, 2005 WL

26

27 [6] "To assert a cause of action under Article I, § 1 of the California Constitution, one must establish three elements:
(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3)
conduct by the defendant that amounts to a "serious invasion" of the protected privacy interest."  Norman-Bloodsaw

28 v. Lawrence Berkeley Lab., 135 F.3d 1260, 1271 (9th Cir. 1998).

976985 (9th Cir. Apr. 28, 2005).

"The federal Constitution contains no provision expressly setting forth or guaranteeing a constitutional right of 'privacy[,]' " Am. Acad. of Pediatrics v. Lungren, 16 Cal.4th 307, 326 (1997), but courts have held that there are some privacy rights that are within those fundamental rights that are protected by the Due Process Clause of the Fourteenth Amendment, Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 847 (1992).  "In two cases decided more than 30 years ago, [the Supreme Court] referred broadly to a constitutional privacy 'interest in avoiding disclosure of personal matters.' "  Nat'l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 138 (2011) (quoting Whalen v. Roe, 429 U.S. 589, 599–600 (1977); Nixon v. Administrator of General Services, 433 U.S. 425, 457 (1977)).  The Court recognized that there are two kinds of privacy interests: 1) an individual's interest in avoiding disclosure of personal matters; and 2) an individual's interest in making certain kinds of important decisions.  Whalen, 429 U.S. at 599.  In Nelson, the Supreme Court assumed without deciding that there was a constitutional right to informational privacy.  Nelson, 562 U.S. at 138.

The Ninth Circuit has recognized a constitutional protected privacy interest in avoiding disclosure of personal matters which encompasses medical records, although the Supreme Court has never so held.  Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998); Seaton v. Mayberg, 610 F.3d 530, 537 (9th Cir. 2010).  "Some courts have held that where the government releases information, it must be of a highly personal nature before constitutional privacy rights will attach."  Arakawa v. Sakata, 133 F. Supp. 2d 1223, 1228 (D. Haw. 2001).

Unlike a privilege, the right of privacy is not an absolute bar to discovery and courts must balance the need for the information against the claimed privacy right.  Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604 (C.D. Cal. 1995) ("Even if the requested documents in defendants' personnel files are protected by defendants' privacy right, that right may, nevertheless, be invaded for litigation purposes."); Soto, 162 F.R.D. at 616 ("Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted.").  "[E]ven where the balance weighs in favor of disclosure of private

1    information, the scope of disclosure will be narrowly circumscribed; such an invasion of the

2    right of privacy must be drawn with narrow specificity and is permitted only to the extent

3    necessary for a fair resolution of the lawsuit."  Cook v. Yellow Freight Sys., Inc., 132 F.R.D.

4    548, 552 (E.D. Cal. 1990); Estate of Sanchez v. Cty. of Stanislaus, No. 118CV00977DADBAM,

5    2019 WL 1959579, at *5 (E.D. Cal. May 2, 2019) (same).

6         Here, CRMC claims a privacy interest exists for the names of the individuals identified in

7    the documents because they expected that the information that they provided would remain

8    confidential.  However, there is no general right to privacy in information that an individual does

9    not want disclosed.  The objections based on the individuals participating in the peer review

10   process have been addressed above.

11        In addressing the discovery of peer review files to determine the scope of protection to be

12   accorded in the privacy context courts in this circuit consider:  "(1) [T]he probable encroachment

13   of the individual's privacy right if the contested action is allowed to proceed, and the magnitude

14   of the encroachment; (2) whether the encroachment of the privacy right would impact an area

15   that has traditionally been off limits from most regulation; (3) whether the desired information is

16   available from other sources with less encroachment of the privacy right; (4) the extent to which

17   the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the

18   interests of society at large encourage a need for the proposed encroachment."  Burrows, 187

19   F.R.D. at 612 (N.D. Cal. 1998) (citing Pagano, 145 F.R.D. at 698–99).

20        In Pagano, the Court reasoned that fourth and fifth factors, which both bear on the
          policies favoring discovery, outweighed the first two factors which bear on the
21        degree of encroachment.  This is because discovery and admissibility of relevant
          truthful information affect the individual rights of litigants as well as the public
22        interest.  As one court has noted, "litigation has the tendency to make public the
          sort of information that individuals would otherwise prefer to keep private.
23        Public disclosure, in the end, is not only natural and generally unavoidable but
          also necessary and healthy to a process so dependent on truth and accuracy."
24        Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 551 (E.D. Cal. 1990) (as
          cited in Pagano, 145 F.R.D. at 699).  In addition, the names of patients and
25        physicians were kept confidential in order to minimize the degree of
          encroachment upon the privacy rights of individuals.  Finally, because the
26        information sought was not available from other sources, the third factor also
          weighed in favor of disclosure.

27   Burrows, 187 F.R.D. at 612–13.  Finding the reasoning in Pagano persuasive, the Burrows court

28

1    found that the peer review records were discoverable subject to a protective order.  Id. at 613.

2          Here, the information that Defendants are seeking in the peer review files only applies to

3    the April 2, 2012 surgery by Plaintiff Chaudhry on Mr. Perez.  The information regarding

4    Plaintiff Chaudhry's treatment of Mr. Perez has been largely disclosed in the state malpractice

5    trial and Plaintiff Chaudhry has waived his privacy rights in regard to the peer review file by

6    bringing this action.  To the extent that CRMC raises privacy rights of other patients or other

7    physicians, Defendants are not seeking any private medical information of any third party other

8    than the incident regarding Mr. Perez, who has already waived his privacy rights and did not

9    object to the release of the documents in this case.  Although CRMC argues that the individuals

10   expected the information provided to remain confidential, this can be addressed through a

11   protective order limiting any discovery produced to use in this action.  The degree of

12   encroachment on the privacy rights of the individuals named in the documents is not great and is

13   necessary for Defendants to compare the statements made at the time of the incident with the

14   later statements made to DHS investigators.

15         The information sought by the subpoena is not available from any other source and is

16   highly relevant to Defendants' claims in this action that a reasonable investigation was

17   conducted.  Additionally, to the extent that information in the peer review file implicates privacy

18   concerns, these concerns can be addressed through a protective order limiting the disclosure to

19   use in this action.  Therefore, the policies bearing on discovery outweigh the privacy rights that

20   have been raised by CRMC.  Accordingly, balancing the factors to be considered, the Court finds

21   that Defendants need for the peer review file outweighs any privacy concerns and the objection

22   on this ground is overruled.  CRMC shall produce responsive documents but may redact any

23   information in the files regarding incidents or patients other than the April 2, 2012 surgery on

24   Mr. Perez.

25   **IV.**

26   **CONCLUSION AND ORDER**

27         Based on the foregoing, IT IS HEREBY ORDERED that:

28         1.     Defendants' motion to compel compliance with the subpoena for production of

documents served on third-party Community Regional Medical Center is GRANTED IN PART AND DENIED IN PART as follows:

a.    Community Regional Medical Center's objections on the ground of attorney-client privilege are sustained as to the communications from attorneys on 8/14/12, 9/6/12, and 9/13/12 and these documents are not required to be produced;

b.    All other objections are overruled;

c.    The parties shall meet and confer on a protective order and a protective order shall be filed within **fourteen (14) days** of the date of service of this order; and

d.    Community Regional Medical Center shall produce responsive documents within **fourteen (14) days** of the entry of the protective order.

IT IS SO ORDERED.

Dated:   **December 7, 2020**

UNITED STATES MAGISTRATE JUDGE