# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERVAIZ A. CHAUDHRY, M.D., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SONIA ANGELL, et al., <br><br> Defendants. | Case No. 1:16-cv-01243-SAB <br><br> ORDER GRANTING NONPARTY CRMC'S MOTION TO QUASH TRIAL SUBPOENA <br><br> (ECF No. 153) |

## I.
## INTRODUCTION

Currently before the Court is nonparty Fresno Community Hospital and Medical Center, dba Community Regional Medical Center's ("CRMC") motion to quash the trial subpoena served by Plaintiffs Pervaiz Chaudhry and Valley Cardiac Surgery Medical Group ("Plaintiffs"). The Court heard oral argument on motion to quash on April 28, 2021 via Zoom videoconference. Having considered the moving and opposition papers, arguments presented at the April 28, 2021 hearing, as well as the Court's file, the Court issues the following order granting nonparty CRMC's motion to quash the trial subpoena.

## II.
## BACKGROUND

Plaintiff Chaudhry, a cardiothoracic surgeon, performed open heart surgery April 2,

2012, on a patient, Mr. Perez, who went into cardiac arrest and suffered hypoxic brain injury. On April 11, 2020, the California Department of Public Health ("CDPH") received an anonymous complaint alleging that Plaintiff Chaudhry left the operating room while the patient's chest was still open and left the hospital before the surgery was completed. Around April 16-19, 2012, the CDPH began an investigation into the anonymous complaint. As a result of the investigation, CDPH prepared a statement of deficiencies and plan of correction dated August 23, 2012. The statement of deficiencies found that Plaintiff Chaudhry left the operating room at 11:45 a.m. and that his physician assistant and Dr. Dhillion, the assistant surgeon, sutured the chest closed at approximately 12:00 p.m. and then left the operating room. The report found that Plaintiff Chaudhry left the open heart surgery prior to the closing of the chest and prior to stabilization in violation of hospital medical staff bylaws. The report further found that the hospital failed to ensure that quality medical care was provided to patients and failed to ensure that medical staff bylaws and regulations were enforced when Plaintiff Chaudhry left the open heart surgery prior to closure of the chest. The report was amended on November 25, 2014, to state that Plaintiff Chaudhry left the operating room at about 12:15 p.m.[1]

On June 17, 2016, Plaintiffs Chaudhry and Valley Cardiac Surgery Medical Group filed a complaint in Fresno County Superior Court. (ECF No. 1 at 10-30.) On August 19, 2016, Defendants Karen Smith,[2] Steven Lopez, Eric Creer, Shirley Campbell, and Deidre Kappmeyer removed the action to the Eastern District of California. (ECF No. 1.) Following summary judgment, this action is proceeding against Sonia Angell[3] in her official capacity, Steven Lopez in his individual capacity, and Shirley Campbell in her individual capacity ("Defendants") on allegations of violations of due process.[4] (ECF Nos. 56, 60).

On September 21, 2020, the pretrial conference was held and discovery was reopened for the limited purpose of obtaining documents from CRMC. (ECF No. 114.) On October 5, 2020,

---

[1] The facts are taken from the undisputed facts listed in the pretrial order. (ECF No. 88 at 2-6.)

[2] Karen Smith was named as a defendant for the purposes of obtaining injunctive and declaratory relief.

[3] On March 18, 2020, Sonia Angell was substituted for Karen Smith. (ECF No. 101.)

[4] Defendant Kappmeyer has been terminated from this action at the stipulation of the parties. (ECF Nos. 59, 60.)

2

Defendants served a notice to the consumer, Mr. Perez, and a subpoena to produce documents on CRMC. (ECF No. 118 at 14-20.) On this same date, Mr. Perez notified defense counsel that he had no objection to the subpoena. (Id. at 38.) On October 22, 2020, CRMC served objections to the subpoena. (Id. at 22-24.) On October 27, 2020, CRMC served a privilege log. (Id. at 27-33.)

On November 4, 2020, Defendants filed a motion to compel CRMC's compliance with the subpoena. (ECF No. 117.) An amended motion to compel was filed on November 5, 2020. (ECF No. 118.) Following briefing and a hearing on the matter, on December 7, 2020, the Court granted in part and denied in part Defendants' motion to compel. (ECF No. 122.)

On April 23, 2021, Plaintiffs filed an *ex parte* application for an order to show cause why a contempt sanction should not issue for the alleged failure of nonparty CRMC to comply with the December 7, 2020 order on the motion to compel and associated subpoena. (ECF No. 151.) The Court set the application for a hearing on shortened time, setting the matter to be heard on April 28, 2021. (ECF No. 152.)

On April 26, 2021, CRMC filed a motion to quash a trial subpoena, or in the alternative, an *ex parte* application to hear the motion on shortened time. (ECF No. 153.) On April 27, 2021, the Court granted the application to hear the motion on shortened time, and set the hearing on CRMC's motion to quash to be heard concurrently on April 28, 2021, with Plaintiffs' application for an order to show cause. (ECF No. 163.)

The Court heard oral argument on both Plaintiffs' application and CRMC's motion to quash, on April 28, 2021 via Zoom videoconference.[5] Counsel H. Ty Kharazi and Thornton Davidson appeared by video on behalf of Plaintiffs Pervaiz Chaudhry and Valley Cardiac Surgery Medical Group. Counsel Diana Esquivel appeared by telephone on behalf of Defendants. Counsel Karen Ray appeared by video for nonparty CRMC.

---

[5] While the Court issues separate orders for purposes of clarity as to Plaintiffs' *ex parte* application and CRMC's motion to quash, the Court notes the discussion at the hearing pertained to both the application and motion, and indeed, Plaintiffs' opposition to the motion to quash was also offered as a filing of "additional support" for their *ex parte* application for an order to show cause. (See ECF No. 165 at 1.) Some of the Court's discussion in the forthcoming order adjudicating Plaintiffs' *ex parte* application may be relevant to this order, and vice versa, and thus, the Court incorporates the discussion therein here, and vice versa.

# III.

# LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ." Fed. R. Civ. P. 45(a)(1)(A)(iii). In response to the subpoena, the nonparty must serve objections to the request before the earlier of the time specified for compliance or fourteen days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B.) If an objection is made, the serving party may move for an order compelling compliance in the court for the district where compliance is required. Fed. R. Civ. P. 45(b)(1)(B(i).

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26. Under the Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Although relevance is broadly defined, it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351). While discovery

should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents. <u>Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.</u>, 649 F.2d 646, 649 (9th Cir. 1980). In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case. <u>Dart Industries Co., Inc.</u>, 649 F.2d at 680. "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." <u>Gonzales</u>, 234 F.R.D. at 680.

Rule 45(d)(3)(A) sets forth the bases for a court to quash or modify a subpoena, which provides, in pertinent part, that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; . . . or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A); <u>see also</u> Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena [and] [t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.").

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." <u>Moon</u>, 232 F.R.D. at 637 (citing <u>Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter</u>, 211 F.R.D. 658, 662 (D. Kan. 2003)). Thus, in determining undue burden, the Court should weigh the burden of the subpoenaed party against the requested information's relevance, need of the serving party for the information, the breadth of the information requested, the time period covered by the request, and the particularity with which the request is made. <u>Moon</u>, 232 F.R.D. at 637.

## IV.

## DISCUSSION

Nonparty CRMC filed this motion seeking to quash a document and trial subpoena issued to the Custodian of Records for CRMC on April 22, 2021. (CRMC's *Ex Parte* Mot. Quash

Subpoena ("Mot.") 2, ECF No. 153.)  The date of compliance for the subpoena is the start of the trial in this action, May 4, 2021.  CRMC requested an order shortening time for a hearing on the basis the subpoena failed to allow a reasonable time to comply with the large and burdensome document demand, and the trial date left no time for a regularly notice motion.

As the proffered reasons to quash, CRMC first argues the subpoena was not properly served on CRMC because the subpoena was not accompanied by a witness fee and a mileage allowance as required by law.  (Mot. 2; Decl. Karen Ray Supp. *Ex Parte* Mot. Quash ("Ray Decl.") ¶ 5, ECF No. 153-1; Ex. A, ECF No. 153-1 at 6.)  Further, in the event Plaintiffs re-serve the subpoena with the procedural corrections, CRMC argues a motion to quash is still proper to be considered prior to the trial as CRMC argues there would be even less time to comply with the document demand; Plaintiffs' subpoena seeks documents and ESI that is not reasonably accessible due to undue burden and costs; and the subpoena fails to allow a reasonable time to comply.  (Mot. 2.)  CRMC also highlights the subpoena seeks a privilege log of all unproduced documents related to CRMC's January 4, 2021 production and an *in camera* review of privileged documents; seeks documents which are presumably in the custody of the California Department of Public Health ("CDPH"); and seeks ESI in the form of texts and emails.  (Mot. 3.)

### A.  Failure to Provide Witness Fees or Reasonable Mileage Costs

CRMC argues the subpoena is invalid because it was not accompanied by witness fees for one day's attendance and reasonable mileage.  Fed. R. Civ. P. 45(b)(1).  CRMC argues the failure to simultaneously tender witness fees invalidates the service, CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), 713 F.2d 494, 496 (9th Cir. 1983); In re Dennis, 330 F.3d 696, 704–05 (5th Cir. 2003).  (Mot. 4.)

The Court agrees that service was invalid in this instance.  Plaintiffs offered no direct response to this argument, nor any competing caselaw to counter the clear discussion in the cases proffered by CRMC.  See CF & I Steel Corp., 713 F.2d at 496 (upholding court's granting of motion to quash subpoena on basis of invalid service due to no tendering of witness and mileage fees, stating "[t]he language is clear and the interpretation adopted by the district court is supported by widely accepted treatises on civil procedure," and therefore holding the plain

meaning the rule "requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena."); In re Dennis, 330 F.3d at 704 ("The conjunctive form of the rule indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance . . . [a]ccordingly, the subpoena was not properly served."); see also Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc., No. 2:16-MC-0145 KJM AC, 2016 WL 5469257, at *1 (E.D. Cal. Sept. 29, 2016) (noting "it appears that more generally, the court can quash the subpoena if it is invalid or procedurally defective," and that while "CF & I Steel was decided long before the 1991 amendments to the rules that added the specific grounds for quashing subpoenas . . . those amendments do not 'diminish' the rights of witnesses [but] [r]ather, the notes to the amendments indicate that they further protect witnesses [and] [t]herefore, even though 'invalidity' and 'procedural defect' are not listed as grounds for quashing subpoenas, they are still valid grounds for doing so."); BNSF Ry. Co. v. Alere, Inc., No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *6 (S.D. Cal. May 17, 2018) ("It is well settled that a witness fee must be tendered concurrently with the service of a subpoena . . . [t]hus, unless Respondent waived the requisite tendering of a witness fee or failed to properly object to the absence of such a fee, service of the subpoena was defective.").

Accordingly, the Court finds the subpoena was improperly served, and the Court shall grant nonparty CRMC's motion to quash on that ground. The Court now turns to consideration of the issues presented regarding the reasonableness of the time to respond, and burden of complying with the subpoena, particularly if Plaintiffs re-serve the subpoena with even less time to comply.

**B.  Whether the Subpoena Fails to Allow Reasonable Time to Comply and is Unduly Burdensome**

CRMC argues that even if Plaintiffs re-serve the subpoena, hearing the motion to quash is necessary because there would be even less time to comply with the document production, and while Rule 45 does not define a specific reasonable time, a response time of less than one week is not reasonable, particularly for such a large and burdensome document production. The Court

7

turns to CRMC's specific arguments.

### 1. CRMC's Arguments Regarding ESI Demand

The ESI demand of the subpoena for text messages and emails requests: "Any and all correspondence, e-mail, text messages, between CDPH and CRMC in connection with Complaint No. CA00306344, concerning the April 2, 2012 operation of Silvano Perez." (Ray Decl. ¶ 5, Ex. A, ECF No. 153-1 at 8.)

CRMC argues the ESI is not reasonably accessible due to undue burden and cost, and specifically: the information sought is nine (9) years old and the emails are archived needing to be exported to a readable format; a data search cannot be run until the data is exported; the subpoena does not identify individual persons in the description of ESI but only identifies the entities CDPH and CRMC, which complicates the search as there are thousands of employees and hospital affiliated email accounts; after exportation a quality search would have to be run; and last, data will have to be uploaded for accessibility. (Ray Decl. ¶ 9.) CRMC argues this is an unfeasible task due to the short period of time; there was no reason the subpoena could not have been issued earlier for this ESI when discovery was open and would allow for the IT department to perform a search, and is thus unreasonable, oppressive, costly, and burdensome. (Mot. 5.)

### 2. CRMC's Arguments Regarding CDPH Documents

The subpoena seeks "[a]ny and all documents, regarding Statement of Deficiencies and Plan of Correction (State 2567) Complaint No. CA00306344, concerning the April 2, 2012 operation of Silvano Perez, including all iterations of the plans of correction submitted to CDPH, whether accepted, rejected or asked for clarification and/or revision." (Ray Decl. ¶ 5, Ex. A, ECF No. 153-1 at 8.)

CRMC argues these documents are in the custody of CDPH, a party to the action. (Mot. 6.) CRMC argues the issuing of a subpoena on the eve of trial to a nonparty witness for information available from a party during discovery, is unreasonable, and the subpoena additionally does not allow for reasonable time to comply with the demand. (Mot. 6.)

///

### 3. CRMC's Arguments Regarding Privilege Log and *In Camera* Request

The subpoena seeks "[a]ny and all Peer review documents of Dr. Pervaiz Chaudhry, M.D. including a privilege log of all un-protected documents in connection with the April 2, 2012 operation of patient Silvino Perez [and] all privileged documents be available for an in camera review." (Ray Decl. ¶ 5, Ex. A, ECF No. 153-1 at 8.)

CRMC argues the request is unwarranted because it complied with the Court's December 7, 2020 order and produced all responsive peer review documents on January 4, 2021. (Mot .6; Ray Decl. ¶ 10.) Two weeks later, on January 20, 2021, CRMC's counsel received an email from Plaintiffs' counsel H. Ty Kharazi, claiming the production was incomplete and demanding verification of the responses by January 22, 2021, or he would seek sanctions and forensic examination of CRMC's compute files. (Mot. 6; Ray Decl. ¶ 10.) CRMC's counsel called Counsel Kharazi the same day, January 20, 2021, and CRMC's counsel proffers that Kharazi represented there were "about 12 pages" of documents missing, but refused to give Ms. Ray any further description. Ms. Ray asked for Mr. Kharazi to provide the documents so she could give them to CRMC, but alleges he refused. (Mot. 6-7; Ray Decl. ¶ 10.)

The same day, January 20, 2021, Ms. Ray contacted CRMC asking to perform another search based on Mr. Kharazi's description to make sure no documents were inadvertently omitted, and two days later, on January 22, 2021, CRMC's counsel emailed Mr. Kharazi and informed him CRMC was performing another search. Ms. Ray again asked Mr. Kharazi to send the documents, but he again he did not. (Id.) On February 9, 2021, Mr. Kharazi emailed Ms. Ray his list of documents, described as follows: (1) Statement from Diane Carlson; (2) IRS Entries; (3) Statement and emails from Erin McCurley; (4) Print out of Peer Review Database; (5) Communications from Toni Snyder; (6) Statement to CDPH by the "Surveyor."; (7) Statement by McComb to the Surveyor; (8) Interviews with Denise Currey and Mary Lopez; and (9) Letter from CMS to start the inquiry. (Mot. 7; Ray Decl. ¶ 12, Ex. E.)

Following another search by the hospital, CRMC determined there were no other documents to be produced, and specifically: No. 9 had already been produced; it was unclear what No. 4 was; and as for Nos. 1-3 and 5-8, there were no documents matching this description

in the peer review file. (Mot. 7; Ray Decl. ¶ 12.) CRMC proffers that documents 1-3, and 5-8, appeared to pertain to the hospital's risk management and involvement with the CDPH investigation, and not the Peer Review investigation of Dr. Chaudhry, which are completely different files. (Id.) Specifically, Risk Management has an electronic file system overseen by the hospital's legal department, whereas Peer Review keeps its own files on its physicians. Accordingly, on March 2, 2021, Ms. Ray emailed the parties a copy of the Declaration Certifying Peer Review Records, signed by Laura McComb.

Thereafter, between March 2, 2021, and April 22, 2021, CRMC's counsel did not hear anything from Plaintiffs' counsel regarding the document production, until receiving a letter at the close of business from Plaintiffs' counsel informing her that he would asking the Court on April 23, 2021 for intervention regarding concerns with the privilege log. (Mot. 8.)

CRMC proffers the peer review file relating to Dr. Chaudhry is extensive, contains hundreds, if not thousands of pages of peer review documents unrelated to Perez's surgery, and not only contains information pertaining to patient incidents but also professional conduct, behavior, privileges, reappointments, ongoing professional practice evaluations, rate incidences, surgical outcome statistics, and other things. (Mot. 8; Ray Decl. ¶ 14.) Therefore, the Bates numbering on the privilege log reflects the page count for Dr. Chaudhry's entire peer review file, and only a portion pertains to Perez's surgery.

CRMC argues these documents were not produced because it was agreed that none of this information would be disclosed and after the Court's December 7, 2020 order, CRMC produced the responsive documents only pertaining to Mr. Perez's surgery. (Id.) CRMC emphasizes that Plaintiff has had approximately two months since CRMC served counsel with the Certification of Records Declaration to raise the issue with CRMC's document production based on its privilege log, but instead, waited until a week before trial to serve a subpoena requesting CRMC produce another privilege log of unproduced documents and undergo an *in camera* review.

CRMC argues this is unreasonable, and Fed. R. Civ. P. 45 makes it clear that subpoenas are not to be used as tools for abuse, especially on a non-party.

///

### 4. Plaintiff's Arguments in Opposition

Plaintiffs frame the Court's December 7, 2020 order as expressly ordering CRMC to produce the entire peer review file, with the exception of documents protected by the attorney-client privilege. (Pls. Opp'n Mot. Quash ("Opp'n") 3, ECF No. 165.) Plaintiffs proffer that while CRMC claims to have produced the entire set of responsive documents by January 4, 2021, they did not provide a certification that all records were produced, and thereafter, the parties engaged in "back and forth sparring for months over the completeness of the records produced." Plaintiffs argue CRMC is attempting to shift the attention away from its own non-compliance by focusing on whether Plaintiffs timely presented the issues of completeness of production. (Opp'n 3-4.)

Plaintiffs state that if there is not enough time now to produce ESI from 2012, there *was* enough time in November of 2020 when they filed the opposition to the subpoena, and in December of 2020, however CRMC never asked the Court to reconsider its order. Plaintiffs argue CRMC should have argued burden previously in their opposition to the motion to compel, but instead focused all their attention on claims of privilege, and the Court may only consider untimely objections in unusual circumstances that do not apply here. (Opp'n 4.)

Plaintiffs argue CRMC has given no credible response to the discrepancy in the Bates numbering of files produced, and marked in the privilege log cited by Plaintiffs' counsel in the April 22, 2021 letter; have given no credible explanation for the long delay in obtaining a certification that all responsive peer review records have been produced; and failed to explain why it did not raise its current Rule 45 objections in a timely way in November and December of 2020 so as to not prejudice Plaintiffs access to important evidence. (Opp'n 5.)

As for CRMC's argument that the Peer Review File contains numerous records relating to medical cases other than the Perez matter, Plaintiffs contend this argument fails because CRMC already asserted those same objections in its opposition to the motion to compel, and Plaintiffs argue the Court's order overruled all other objections except those related to attorney-client privilege, and CRMC is not entitled to rewrite the December 7, 2020 order. (Opp'n 5.)

///

### 5. The Court Declines to Address Substance of Subpoena as Service was Invalid

The Court has already determined that the subpoena issued by Plaintiffs is procedurally invalid because the subpoena was not accompanied by witness fees or costs for reasonable mileage, and thus the subpoena shall be quashed on such grounds. Accordingly, the Court declines to make an express ruling as to the content of the subpoena as it was currently presented to the Court. Nonetheless, given the matters discussed at the hearing pertaining to both Plaintiffs' application for an order to show cause, and nonparty CRMC's motion to quash, the Court will make some observations, and highlight Plaintiffs' concession made at the hearing.

Plaintiffs may be wise to consider the scope of the subpoena originally issued by Defendants, as then narrowed through meet and confer and the motion to compel process, in comparison to the requests contained in the trial subpoena issued by Plaintiffs before the Court here.[6] Maintaining congruity between the initial subpoena request by Defendants, as previously narrowed, would lend toward a finding that a trial subpoena issued with a small time frame to comply, is reasonable, particularly if only requesting documents already required to be produced by the nonparty CRMC. It appears that the trial subpoena is seeking documents that were not part of the subpoena as narrowed, or ordered to be produced by the Court on December 7, 2020. (See ECF No. 153-1 at 8 ("all Peer Review documents of Dr. Pervis [sic] Chaudhry . . . including a privilege log of all un-produced documents in connection with the April 2, 2012 operation of patient Silvano Perez")[7]; ECF No. 122 at 25 ("Here, the information that Defendants are seeking in the peer review files only applies to the April 2, 2012 surgery by Plaintiff Chaudhry on Mr. Perez.").) In this regard, at the hearing held on April 28, 2021, counsel for Plaintiffs stated they would concede that the additional documents that were requested in the trial subpoena do not need to be produced as long as Plaintiffs received "the rest of the MEC file and the correspondence between the State and the MEC committee, which [Plaintiffs] think should have been part of the production."

---

[6] The Court discusses this issue and related disputes in greater detail in the forthcoming order on Plaintiffs' application for an order to show cause.

[7] While the request uses the language of "including" the more narrow category pertaining to Perez, the request references all peer review documents pertaining to Plaintiff Chaudhry. (ECF No. 153-1 at 8.)

## V.

## CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED that nonparty Fresno Community Hospital and Medical Center, dba Community Regional Medical Center's motion to quash the trial subpoena served by Plaintiffs Pervaiz Chaudhry and Valley Cardiac Surgery Medical Group (ECF No. 153), is GRANTED.

IT IS SO ORDERED.

Dated: **April 28, 2021**

UNITED STATES MAGISTRATE JUDGE

13