# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERVAIZ A. CHAUDHRY, M.D., et al., | Case No. 1:16-cv-01243-SAB |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE |
| v. | |
| SONIA ANGELL, et al., | (ECF No. 151) |
| Defendants. | |

**I.**

**INTRODUCTION**

Currently before the Court is Pervaiz Chaudhry's and Valley Cardiac Surgery Medical Group's ("Plaintiffs") *ex parte* application for an order to show cause why a contempt citation should not issue for the alleged failure of nonparty Community Regional Medical Center ("CRMC") to comply with the Court's previous order granting in part Sonia Angell's, Steven Lopez's, and Shirley Campbell's ("Defendants") motion to compel CRMC to comply with a subpoena and produce its Medical Executive Committee's Peer Review File (the "Peer Review File"). (ECF No. 151.) The Court heard oral argument on the application for an order to show cause on April 28, 2021 via Zoom videoconference. Having considered the moving and opposition papers, arguments presented at the April 28, 2021 hearing, as well as the Court's file, the Court issues the following order denying Plaintiffs' application.

## II.

## BACKGROUND

Plaintiff Chaudhry, a cardiothoracic surgeon, performed open heart surgery April 2, 2012, on a patient, Mr. Perez, who went into cardiac arrest and suffered hypoxic brain injury. On April 11, 2020, the California Department of Public Health ("CDPH") received an anonymous complaint alleging that Plaintiff Chaudhry left the operating room while the patient's chest was still open and left the hospital before the surgery was completed. Around April 16-19, 2012, the CDPH began an investigation into the anonymous complaint. As a result of the investigation, CDPH prepared a statement of deficiencies and plan of correction dated August 23, 2012. The statement of deficiencies found that Plaintiff Chaudhry left the operating room at 11:45 a.m. and that his physician assistant and Dr. Dhillion, the assistant surgeon, sutured the chest closed at approximately 12:00 p.m. and then left the operating room. The report found that Plaintiff Chaudhry left the open heart surgery prior to the closing of the chest and prior to stabilization in violation of hospital medical staff bylaws. The report further found that the hospital failed to ensure that quality medical care was provided to patients and failed to ensure that medical staff bylaws and regulations were enforced when Plaintiff Chaudhry left the open heart surgery prior to closure of the chest. The report was amended on November 25, 2014, to state that Plaintiff Chaudhry left the operating room at about 12:15 p.m.[1]

On June 17, 2016, Plaintiffs Chaudhry and Valley Cardiac Surgery Medical Group filed a complaint in Fresno County Superior Court. (ECF No. 1 at 10-30.) On August 19, 2016, Defendants Karen Smith,[2] Steven Lopez, Eric Creer, Shirley Campbell, and Deidre Kappmeyer removed the action to the Eastern District of California. (ECF No. 1.) Following summary judgment, this action is proceeding against Sonia Angell[3] in her official capacity, Steven Lopez in his individual capacity, and Shirley Campbell in her individual capacity ("Defendants") on

---

[1] The facts are taken from the undisputed facts listed in the pretrial order. (ECF No. 88 at 2-6.)

[2] Karen Smith was named as a defendant for the purposes of obtaining injunctive and declaratory relief.

[3] On March 18, 2020, Sonia Angell was substituted for Karen Smith. (ECF No. 101.)

allegations of violations of due process.[4] (ECF Nos. 56, 60).

On September 21, 2020, the pretrial conference was held and discovery was reopened for the limited purpose of obtaining documents from CRMC. (ECF No. 114.) On October 5, 2020, Defendants served a notice to the consumer, Mr. Perez, and a subpoena to produce documents on CRMC. (ECF No. 118 at 14-20.) On this same date, Mr. Perez notified defense counsel that he had no objection to the subpoena. (Id. at 38.) On October 22, 2020, CRMC served objections to the subpoena. (Id. at 22-24.) On October 27, 2020, CRMC served a privilege log. (Id. at 27-33.)

On November 4, 2020, Defendants filed a motion to compel CRMC's compliance with the subpoena. (ECF No. 117.) An amended motion to compel was filed on November 5, 2020. (ECF No. 118.) Following briefing and a hearing on the matter, on December 7, 2020, the Court granted in part and denied in part Defendants' motion to compel. (ECF No. 122.)

On April 22, 2021, a hearing regarding the trial scheduled for May 4, 2021 was conducted. At the hearing, Plaintiffs' counsel raised an issue with CRMC's compliance with the December 7, 2020 order requiring CRMC to produce a peer review file in response to a subpoena. The parties were advised that the Court would not address the issue outside the presence of CRMC's counsel and that a motion was required to filed. On April 23, 2021, Plaintiffs filed the *ex parte* application for an order to show cause that is currently before the Court. Plaintiffs did not file an application for an order shortening time nor did they set a noticed motion and because the trial of this matter is set to begin in just over a week, the Court *sua sponte* set the application for a hearing on shortened time to be heard on April 28, 2021, at 10:00 a.m. in Courtroom 9. (ECF No. 152.) The Court ordered any opposition to be filed on or before 4:00 p.m. on April 27, 2021. (Id.)

On April 26, 2021, CRMC filed a motion to quash a trial subpoena, or in the alternative, an *ex parte* application to hear the motion on shortened time. (ECF No. 153.) On April 27, 2021, the Court granted the application to hear the motion on shortened time, and set the hearing

---

[4] Defendant Kappmeyer has been terminated from this action at the stipulation of the parties. (ECF Nos. 59, 60.)

1 on CRMC's motion to quash to be heard concurrently on April 28, 2021, with Plaintiffs' application for an order to show cause. (ECF No. 163.) On April 27, 2021, nonparty CRMC filed an opposition to Plaintiffs' application for an order to show cause, and Plaintiffs filed an opposition to CRMC's motion to quash. (ECF Nos. 164, 165.)

The Court heard oral argument on both Plaintiffs' application for an order to show cause and CRMC's motion to quash, on April 28, 2021 via Zoom videoconference.[5] (ECF No. 166.) Counsel H. Ty Kharazi and Thornton Davidson appeared by video on behalf of Plaintiffs Pervaiz Chaudhry and Valley Cardiac Surgery Medical Group. Counsel Diana Esquivel appeared by telephone on behalf of Defendants. Counsel Karen Ray appeared by video for nonparty CRMC.

## III.

## LEGAL STANDARD

A court may sanction a party for failing to obey a discovery order and may treat the failure as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii). However, a court may not impose Rule 37(b) sanctions against a nonparty for asserted noncompliance with a subpoena issued under Rule 45. See Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1224 (9th Cir. 2018) (other than contempt, "[n]one of the other sanctions available under Rule 37 are available against the nonparty" who fails to comply with a Rule 45 subpoena); see also Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n.4 (9th Cir. 1983) (noting that Rule 37 does not authorize an award of expenses for a motion to compel nonparties to produce documents); Genx Processors Mauritius Ltd. v. Jackson, 2:14-cv-01938-APG-PAL, 2018 WL 5777485, at *9 (D. Nev. Nov. 2, 2018) ("The court may not use the enforcement remedies contemplated in Rule 37 for a nonparties' failure to comply with a subpoena") (citing Pennwalt Corp., 708 F.2d at 494)); Jerry Beeman & Pharmacy Servs., Inc., 322 F. Supp. 3d 1027, 1034 n.4 (C.D. Cal. 2018) (explaining sanctions under Rule 37(b)(2) were not warranted as the moving party did not show "a particular

---

[5] While the Court issues separate orders for purposes of clarity as to Plaintiffs' *ex parte* application and CRMC's motion to quash, the Court notes the discussion at the hearing pertained to both the application and motion, and indeed, Plaintiffs' opposition to the motion to quash was also offered as a filing of "additional support" for their *ex parte* application for an order to show cause. (See ECF No. 165 at 1.) Some of the Court's discussion in the Court's order adjudicating Plaintiffs' motion to quash may be relevant to this order, and vice versa, and thus, the Court incorporates the discussion therein here, and vice versa.

discovery order that ha[d] been violated," but approving inherent authority sanctions).

A court may impose sanctions against a nonparty for failure to comply with a subpoena for document production pursuant to Rule 45. See Fed. R. Civ. P. 45(g); Pennwalt Corp., 708 F.2d at 494; McAllister v. St. Louis Rams, LLC, 2:17-mc-157-AB (KSx), 2018 WL 6164281, at *2 n.4 (C.D. Cal. July 2, 2018) (finding Rule 37 sanctions inapplicable to nonparty, and stating "Rule 45 is only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum") (citing Pennwalt Corp., 708 F.2d at 494).

Under Rule 45, a court may exercise its contempt powers when a person who has been served with a subpoena "fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Contempt sanctions are among a court's inherent powers. See Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); Ochoa v. Lopez, CV 11-9239 AG (MLGx), 2016 WL 9712071, at *1 (C.D. Cal. June 20, 2016) ("A court has inherent power to enforce its orders by holding those who violate those orders in civil contempt and issuing corresponding sanctions.") (citing Shillitani, 384 U.S. at 370).

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual–Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." Id. (quoting In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987)). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." Id. (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)).

"In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section . . . the magistrate judge may exercise the civil

contempt authority of the district court." 28 U.S.C. § 636(e)(4).[6]

## IV.

## DISCUSSION

### A. Plaintiffs' Arguments in Support of the Application

Plaintiffs argue that following the Court's order granting in part Defendants' motion to compel, CRMC was required to produce the Peer Review File, excepting certain attorney-client privileged documents dated August 14, 2012, September 6, 2012, and September 13, 2012, within fourteen days, or by December 21, 2020. (Pls.' *Ex Parte* Appl. & Mem. P. & A. Supp. *Ex Parte* Appl. ("Appl.") 3, ECF No. 151.) Plaintiffs proffer that CRMC did not produce the Peer Review File until January 4, 2021, it was not accompanied by an affidavit of the custodian of records, and "[a]fter numerous requests from Plaintiffs and Defendants," CRMC provided a "Declaration Certifying Peer Review Records," dated February 25, 2021, signed by a Ms. Laura McComb. (Appl. 3.)

Plaintiffs submits that when preparing to submit trial exhibits to the Court, Plaintiffs' counsel realized that despite Ms. McComb's declaration, several of the documents identified in CRMC's privilege log were not included in the Peer Review File that was produced, and moreover, the documents identified in the privilege log, numbering "234 pages[,] exceeded by 118 pages the Peer Review File." (Appl. 3.) Plaintiffs states that among the excluded items were: (1) "Notice of Investigation to Pervaiz Chaudhry, MD," Bates-stamped 3420-3421; (2) "MEC Actions," Bates-stamped 6129-6131; and (3) "Written Communication to Pervaiz Chaudry [sic], Re MEC Investigation," Bates-stamped 6113-6115. (Appl. 3.) Plaintiffs argue these documents are not privileged and the numbering does not conform with Bates-stamps 1-120 used in the produced Peer Review File. (Id.)

---

[6] The Court did not locate any authority as to this provision's applicability when a party in a consent case is seeking contempt sanctions against a nonparty witness. The Court notes that in a case where the parties have not consented to the jurisdiction of a United States magistrate judge and where a party's conduct "constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6). Given the parties and the nonparty here did not dispute the authority to adjudicate this application, and particularly given no civil contempt is found by the undersigned, the Court finds no reason to further explore this issue.

On April 22, 2021, Plaintiffs' counsel Thornton Davidson corresponded with counsel for CRMC, communicated the disparities between the privilege log and CRMC's production, and requested that the production be immediately remedied. (Appl. 4; Decl. Thornton Davidson Supp. *Ex Parte* Appl. ("Thornton Decl.") ¶¶ 6-7, Ex. A-B, ECF No. 151-1 at 1-19.) Counsel proffers that he provided numerous examples where the privilege logs identified documents not included in the Peer Review File and vice versa, and that despite an attempt to follow-up with a phone call to CRMC's counsel, Plaintiffs' counsel has not received any response. (Appl. 4.)

### B. Nonparty CRMC's Response

CRMC argues that Plaintiffs have failed to meet their burden of establishing by clear and convincing evidence that CRMC has violated a court order. (CRMC's Opp'n Pls.' *Ex Parte* Appl. ("Opp'n") 2, ECF No. 164.)

First, CRMC responds that it did timely produce records in compliance with the Court's order. Specifically, CRMC states that after the Court's December 7, 2020 order, the parties met and conferred on a protective order in compliance with the order; counsel stipulated to a protective order on December 18, 2020; the order on the stipulated protective order issued on December 21, 2020 (ECF No. 124); and CRMC was ordered to produce the responsive documents within fourteen (14) days after entry of the protective order, which it did. (Opp'n 2; Decl. Karen J. Ray Supp. Opp'n ("Ray Decl.") ¶ 2, ECF No. 164-1.)

Further, CRMC responds that it did in fact produce all responsive documents in compliance with the Court's order, raising three primary arguments that the Court now turns to. (Opp'n 2.)

#### 1. Delay, Course of Meet and Confer, and Compliance

CRMC contends that Plaintiffs had four months to raise an issue with the document production based on the privilege log, but rather unreasonably waited until one week before trial to bring contempt proceedings. CRMC produced the responsive peer review documents on January 4, 2021. (Ray Decl. ¶ 2.) Two weeks later, on January 20, 2021, CRMC's counsel received an email from Plaintiffs' counsel H. Ty Kharazi, claiming the production was incomplete and demanding verification of the responses by January 22, 2021, or he would seek

7

sanctions and forensic examination of CRMC's compute files. (Opp'n 2; Ray Decl. ¶ 3, Ex. A.) CRMC's counsel called Counsel Kharazi the same day, January 20, 2021, and CRMC's counsel proffers that Kharazi represented there were "about 12 pages" of documents missing, but refused to give Ms. Ray any further description. When Ms. Ray asked for Mr. Kharazi to provide the documents so she could give them to CRMC, he apparently refused. (Opp'n 3; Ray Decl. ¶ 3, Ex. A.)

The same day, January 20, 2021, Ms. Ray contacted CRMC asking to perform another search based on Mr. Kharazi's description to make sure no documents were inadvertently omitted, and two days later, on January 22, 2021, CRMC's counsel emailed Mr. Kharazi and informed him CRMC was performing another search. (Opp'n 3; Ray Decl. ¶ 4, Ex. A.) Ms. Ray again asked Mr. Kharazi to send the documents, but he again did not. (Id.) On February 9, 2021, Mr. Kharazi emailed Ms. Ray his list of documents, described as follows: (1) Statement from Diane Carlson; (2) IRS Entries; (3) Statement and emails from Erin McCurley; (4) Print out of Peer Review Database; (5) Communications from Toni Snyder; (6) Statement to CDPH by the Surveyor; (7) Statement by McComb to the Surveyor; (8) Interviews with Denise Currey and Mary Lopez; and (9) Letter from CMS to start the inquiry. (Opp'n 3; Ray Decl. ¶ 5, Ex. C.)

Following another search by the hospital, CRMC determined there were no other documents to be produced, and specifically: No. 9 had already been produced; it was unclear what No. 4 was; and as for Nos. 1-3 and 5-8, there were no documents matching this description in the peer review file. (Opp'n 3-4; Ray Decl. ¶ 4, Ex. C.) CRMC proffers that documents 1-3, and 5-8, appeared to pertain to the hospital's risk management and involvement with the CDPH investigation, and not the Peer Review investigation of Dr. Chaudhry, which are completely different files. (Opp'n 4.) Specifically, Risk Management has an electronic file system overseen by the hospital's legal department, whereas Peer Review keeps its own files on its physicians. Accordingly, on March 2, 2021, Ms. Ray emailed the parties a copy of the Declaration Certifying Peer Review Records, signed by Laura McComb. (Opp'n 4; Ray Decl. ¶ 4, Ex. C.)

Thereafter, between March 2, 2021, and April 22, 2021, CRMC's counsel did not hear anything from Plaintiffs' counsel regarding the document production, until receiving a letter at

the close of business from Plaintiffs' counsel informing CRMC's counsel that Plaintiffs would be asking the Court on April 23, 2021, for intervention regarding concerns with the privilege log. CRMC emphasizes that counsel worked with Mr. Kharazi before, and there was no reason they couldn't work in good faith again, and Plaintiffs' counsel had ample time to address the concerns with the privilege log since the document production nearly four months prior. (Opp'n 4.)

2. <u>Subpoena only Related to Perez Surgery Documents in Peer Review File</u>

CRMC argues that Plaintiffs' argument that it failed to produce the complete Peer Review File is inaccurate as the subpoena requested, and the Court ordered, CRMC to produce the peer review documents related to Perez's April 2, 2012 surgery, not the entire peer review file. (Opp'n 4.) CRMC proffers the peer review file relating to Dr. Chaudhry is extensive, contains hundreds, if not thousands of pages of peer review documents unrelated to Perez's surgery, and not only contains information pertaining to patient incidents,. but also the physician's professional conduct, behavior, privileges, reappointments, ongoing professional practice evaluations, rate incidences, surgical outcome statistics, among other things. (Opp'n 4-5.) Therefore, the Bates numbering on the privilege log reflects the page count for Dr. Chaudhry's entire peer review file, and only a portion pertains to Perez's surgery. (Opp'n 5.)

3. <u>CRMC did not Improperly Withhold Peer Review Documents</u>

CRMC proffers it produced the responsive peer review documents that pertain to the April 2, 2012 surgery of Mr. Perez; a privilege log was served on October 27, 2020 in response to the CDPH's subpoena; the privilege log referenced numerous documents that contained information pertaining to third party patients, external reviews by outside physicians, and unrelated peer review matters pertaining to Dr. Chaudhry. (Opp'n 5; Ray Decl. ¶ 8.) CRMC argues these documents were included in the privilege log due to the broad language of the subpoena, as it "requested all documents . . . *related* to the peer review of Pervais A. Chaudhry, M.D., *as a result of or in connection with the* April 2, 2012 surgery of Patient Silvino Perez." (Ray Decl. ¶ 8.) However, CRMC states it was later agreed that such information would not be disclosed, and CRMC did not produce peer review documents pertaining to third party patients,

external reviews, and unrelated matters involving Chaudhry, as they were not responsive.[7]

Finally, CRMC argues that Plaintiffs' claim that CRMC added documents to its production that were not included in the privilege log is also without merit. (See Pls.' Ex. A, ECF No. 151-1 at 12.) Specifically, CRMC contends the documents were within certain categories within the privilege log as follows: (1) the peer review summary and dictation of Dominic's interview were included in the category peer review summary; (2) the peer review request for Mr. Perez's surgery was included in the peer review category request to physician reviewer; the letter from Thomas to Chaudhry, 8/10/12 and Right Now Couriers were included in the category MEC actions; the MEC minutes, Dhillon Declaration, handwritten notes and brief context Doc., were included in the category MEC meeting documents; and the email from Gong to Chaudhry were included in the category written communication to Pervaiz Chaudhry, M.D., re MEC Investigation. (Opp'n 6.)

### C. The Court Finds Plaintiffs Failed to Provide Clear and Convincing Evidence for the Imposition of Contempt Sanctions

Plaintiffs first proffer of a violation of the Court's order is that following the issuance of the order on December 7, 2020, CRMC had fourteen (14) days to comply or until December 21, 2020, but did not produce the responsive documents until January 4, 2021. (Appl. 3.) However,

---

[7] CRMC specifically states that the following documents referenced in the privilege log were not produced: (1) Peer review case rating form: Nonresponsive documents pertaining to third party patients; (2) Peer review request to physician reviewer: Nonresponsive documents pertaining to third party patients; (3) Written communication to physician reviewer from CMC Peer Review: Nonresponsive documents pertaining to the physician reviewer for the external reviews of third party patients; (4) Peer review report: Nonresponsive documents pertaining to external reviews of third party patients; (5) Peer review case rating forms: Nonresponsive documents pertaining to third party patients; (6) Notice of investigation: Nonresponsive documents pertaining to unrelated peer review matters involving Dr. Chaudhry; (7) Written communication to Pervaiz Chaudhry, M.D. re investigation of conduct: Nonresponsive documents pertaining to unrelated peer review matters of Dr. Chaudhry; (8) Written communication to Pervaiz Chaudhry, M.D.: Nonresponsive documents pertaining to unrelated peer review matters of Dr. Chaudhry; (9) Professional Conduct/Behavior Agreement: Nonresponsive documents pertaining to unrelated peer review matters of Dr. Chaudhry; (10) Written communication to President of Medical Staff: Nonresponsive documents pertaining to unrelated peer review matters; (11) Written communication to Pervaiz Chaudhry, M.D., from CRMC Multispecialty Peer review committee: Nonresponsive documents pertaining to external reviews of third party patients; (12) Physician certificates of credit; supporting documentation: Nonresponsive documents pertaining to courses taken by Dr. Chaudhry for an unrelated peer review matter; (13) Notice of investigation to Pervaiz Chaudhry, M.D.: Nonresponsive documents pertaining to an unrelated peer review matter of Dr. Chaudhry; and (14) Notice of Action to Pervaiz Chaudhry, M.D.: Nonresponsive documents pertaining to an unrelated peer review matters of Dr. Chaudhry. (Ray Decl. ¶ 9.)

CRMC is correct that the Court's December 7, 2020 order specifically stated the parties were to meet and confer on a protective order with the protective order to be filed within fourteen (14) days after service of the order; and that CRMC was to produce responsive documents within fourteen (14) days after entry of the protective order. (ECF No. 122 at 26.) The stipulated protective order, agreed to by all parties and CRMC, was entered by the Court on December 21, 2020. (ECF Nos. 123, 124.) Fourteen (14) days after that, is January 4, 2021, the date CRMC provided the document production. Thus, Plaintiffs' first proffered statement of CRMC's non-compliance is not clear and convincing, but rather incorrect on its face.

Next, the Court finds Plaintiffs have not shown diligence in pursuing the issues they perceived with the verification and production. Given the tenor of communications prior to the filing of this application and overall course of meeting and conferring, there is not a demonstration of clear and convincing evidence of CRMC's failure to abide by the Court's order. At the hearing on this application, the Court voiced its concerns with the fact that it was Defendants that issued the original subpoena, filed the motion to compel compliance with the subpoena, and conducted the original meeting and conferring regarding the scope of the subpoena prior to the order granting in part the motion to compel. As discussed at the hearing, while Defendants' counsel was apparently part of the initial meeting and conferring following the January 4, 2021 production, Plaintiffs took up the primary pursuit regarding perceived deficiencies, and Defendants' counsel was subsequently dropped from later communications regarding compliance. For purposes of this order, the Court will presume Plaintiffs have standing to pursue compliance with the Court's order granting Defendants' motion to compel compliance with the subpoena issued by Defendants, however, the Court finds these facts demonstrate the course of meeting and conferring with nonparty CRMC did not set off on the best footing.

As summarized above, when Mr. Kharazi reached out to Ms. Ray on January 20, 2021, Ms. Ray immediately placed a call that same day to Mr. Kharazi to discuss the proffered issues with the production; immediately contacted her client CRMC asking to perform another search based on Mr. Kharazi's description of the documents; and on January 22, 2021, the deadline

offered by Mr. Kharazi in the initial communication, Ms. Ray contacted Mr. Kharazi and informed him CRMC was performing an additional search for records that may have inadvertently been missed. (Ray Decl. ¶¶ 3-4.) Thereafter, after declining to initially provide the documents in question that appeared to be missing from the production, Mr. Kharazi emailed a list of nine (9) documents on February 9, 2021, described as follows: (1) Statement from Diane Carlson; (2) IRS Entries; (3) Statement and emails from Erin McCurley; (4) Print out of Peer Review Database; (5) Communications from Toni Snyder; (6) Statement to CDPH by the Surveyor; (7) Statement by McComb to the Surveyor; (8) Interviews with Denise Currey and Mary Lopez; and (9) Letter from CMS to start the inquiry. (Ray Decl. ¶ 5, Ex. C.) The Court has not been presented with any communications after February 9, 2021, until when CRMC provided Plaintiffs with the declaration from Ms. McComb on March 2, 2021. (Id.) While not an overwhelmingly fast turnaround from the date of the initial communication from Mr. Kharazi on January 20, 2021, it appears CRMC reasonably responded to Mr. Kharazi's communications and proffered deadlines, at least sufficiently so that there does not appear to additional communications from Plaintiffs to CRMC presented to the Court during this interim time period.

After March 2, 2021, CRMC's counsel did not hear anything from Plaintiffs' counsel regarding the document production, until receiving a letter at the close of business on April 22, 2021, informing CRMC's counsel that Plaintiffs would be asking the Court on April 23, 2021, for intervention regarding concerns with the privilege log. CRMC emphasizes that counsel worked with Mr. Kharazi before, there was no reason they couldn't work in good faith again, and Plaintiffs' counsel had ample time to address the concerns with the privilege log since the document production nearly four months prior. The Court agrees. Based on the record before it, the Court finds CRMC's counsel reasonably responded to Mr. Kharazi's communications by following up with the client to perform an additional due diligence search, providing the declaration of Laura McComb on March 2, 2021, and then did not hear any response from Plaintiffs until April 22, 2021, seven weeks later. Plaintiffs then sought the imposition of contempt sanctions against CRMC one day later.

Given the record before the Court demonstrating a lack of diligence or communication by

1 Plaintiffs following the receipt of the McComb declaration on March 2, 2021, until providing a
2 letter communication on CRMC on April 22, 2021, only one day before the filing of an
3 application for contempt, and less than two-weeks before trial, the Court would expect a
4 sufficient showing of clear and convincing evidence by Plaintiffs. However, as the parties are
5 aware, issues regarding a lack of reasonable communications regarding discovery disputes is the
6 reason for diligence and meet and confer requirements common throughout discovery laws,
7 rules, and procedures. Thus here, a primary issue with the manner of bringing this application
8 against CRMC and before the Court at this time, is that Plaintiffs have not allowed for sufficient
9 time to rectify or address the issues without court intervention, particularly those that may be
10 attributed to miscommunication or misperceptions, resulting in an insufficient record developed
11 concerning the substantive complaints of Plaintiffs, substantive responses from CRMC, and
12 ultimately an insufficient presentation for the Court to find any violation of its previous order.

Despite these deficiencies in meeting and conferring and bringing the dispute before the Court at an earlier time with a noticed hearing with additional time for briefing and adjudication, the Court nonetheless turns to address the substantive aspects of the dispute as presented.

The Court notes that Plaintiffs' application appears to aver to the Court's order as requiring CRMC to produce the entire Peer Review File, except for certain specific documents covered by attorney-client privilege. (Appl. 2-4.) While the initial subpoena issued by Defendants may have been broader encompassing the entire Peer Review File, following meet and confer, CRMC is correct that the Defendants only sought peer review files relating to the April 2, 2012 surgery of Mr. Perez. The December 7, 2020 order acknowledged the moving Defendants' position as follows:

> Defendants assert they do not seek medical information of other patients referenced in the peer review files and the subpoena is only directed to the documents related to Plaintiff Chaudhry's April 2, 2012 operation of Mr. Perez and they are agreeable to excluding information that does not relate to the April 2, 2012 operation and to a protective order as along as they are able to use relevant evidence from the peer review file at trial.

(ECF No. 122 at 22.) The Court's order then provided:

> Here, the information that Defendants are seeking in the peer review files only

applies to the April 2, 2012 surgery by Plaintiff Chaudhry on Mr. Perez. The information regarding Plaintiff Chaudhry's treatment of Mr. Perez has been largely disclosed in the state malpractice trial and Plaintiff Chaudhry has waived his privacy rights in regard to the peer review file by bringing this action. To the extent that CRMC raises privacy rights of other patients or other physicians, Defendants are not seeking any private medical information of any third party other than the incident regarding Mr. Perez, who has already waived his privacy rights and did not object to the release of the documents in this case. Although CRMC argues that the individuals expected the information provided to remain confidential, this can be addressed through a protective order limiting any discovery produced to use in this action. The degree of encroachment on the privacy rights of the individuals named in the documents is not great and is necessary for Defendants to compare the statements made at the time of the incident with the later statements made to DHS investigators . . .

. . . CRMC shall produce responsive documents but may redact any information in the files regarding incidents or patients other than the April 2, 2012 surgery on Mr. Perez.

(ECF No. 122 at 25.) While the order avers to redaction at one point rather than withholding documents, it also stated the parties could address this issue through a stipulated protective order.

Indeed, after the issuance of the order, the parties were to meet and confer on a protective order and were to file a protective order within fourteen (14) days of service of the order. The protective order, stipulated to by Plaintiffs, Defendants, and CRMC, was entered on December 21, 2020. (ECF No. 124.) As noted therein, it governs the "material contained within CRMC's peer review file pertaining to the April 2, 2012 surgery that Dr. Chaudhry performed on patient Perez." (ECF No. 124 at 3.) The protective order also provided: "This section does not affect CRMC's obligation and right to withhold or redact the names and medical information of third-party patients, unrelated to the April 2, 2012 surgery of patient Perez, contained within the Confidential material or as the parties may otherwise agree." (ECF No. 124 at 4.)[8]

Having reviewed some of the pertinent information concerning the scope of the subpoena

---

[8] Further as potentially relevant to the spirit of meeting and conferring and bringing this issue before the Court, the protective order provides: "Any party or CRMC believing that this Stipulated Protective Order is being violated may move for a Court order of enforcement. The motion shall be subject to all local rules governing motions concerning discovery disputes, including but not limited to meet and confer requirements. Said motion may be brought at any time up to final entry of judgment in this matter." (ECF No. 124 at 6.) As potentially relevant to Plaintiffs' trial subpoena, the protective order further provides that: "Any use of Confidential material at trial shall be governed by a separate agreement or order. Counsel for the parties and CRMC shall meet and confer no less than fourteen days before any Confidential material is sought to be used and/or disclosed at trial. If the parties and CRMC are unable to agree concerning the disclosure of Confidential material at trial, the parties and CRMC agree to adhere to and be bound by Magistrate Judge Boone's procedures for Informal Telephonic Conferences regarding Discovery Disputes." (ECF No. 124 at 3-4.)

and documents ordered to be produced, the Court considers Plaintiffs' argument that several of the documents identified in CRMC's privilege log were not included in the Peer Review File that was produced. (Appl. 3.) Based on the arguments and record before the Court, the Court finds CRMC's argument that the privilege log originally served in October of 2020 contained information pertaining to the broader language of the subpoena as initially served, prior to the request being narrowed with meet and confer with the Defendants, is reasonable. (<u>See</u> Opp'n 5 ("The bates numbering on the privilege log reflect the page count for Dr. Chaudhry's entire peer review file, only a portion of which pertains to Mr. Perez's surgery").) CRMC has provided a sufficient proffer accounting for specific documents that were referenced in the privilege log that were then not produced because they were no longer responsive to the scope of the subpoena. (<u>See</u> Opp'n 5-6.) At the hearing, CRMC provided further reasonable explanations as to the processes employed by the hospital in compiling various sources of documents, and in the manner they use Bates-numbering, including that they do not starting numbering at a base of "0000." Therefore, Plaintiffs have not shown by clear and convincing evidence that CRMC improperly withheld documents that were initially referenced in the October 2020 privilege log when it provided its document production on January 4, 2020.

Finally, Plaintiffs argue that CRMC added documents to its production that were not included in the privilege log. The Court finds CRMC's refutation of Plaintiffs' argument that CRMC added documents to its production that were not included in the initial privilege log to be convincing, as CRMC has accounted for every single document highlighted in the attachment to Plaintiffs' application, demonstrating reasonably that the documents fell within broader categories within the privilege log. (<u>Compare</u> Opp'n 6, <u>with</u> ECF No. 151-1 at 12.) Therefore, Plaintiffs have not shown clear and convincing evidence of failing to comply with the Court's order in this regard.

/ / /

/ / /

/ / /

/ / /

# V.

## CONCLUSION AND ORDER

For all of the above stated reasons, the Court finds Plaintiffs have failed to provide clear and convincing evidence establishing nonparty CRMC has violated the Court's order.

At the hearing on this application, Plaintiffs' counsel repeatedly stated that noncompliance with a court order and subpoena should outweigh any untimeliness or lack of diligence on the part of Plaintiffs to pursue the issues alleged with the production by CRMC, and that they had the right to rely on the custodial declaration. However, at some point, a reasonable and timely investigation must be completed by counsel prior to brining a request for contempt, and based on the record before the Court, it appears Plaintiffs have presented issues, such as the Bates-numbering appearing to be incorrect, that nonparty CRMC has proffered reasonable explanations for. The imposition of civil contempt requires clear and convincing evidence of a violation of the Court's order, and based on the record before it, the Court is of the mind that Plaintiffs took what they perceived as noncompliance, and ran with that presumption without proper due diligence or communication to nonparty CRMC.

The Court acknowledges the verification was not provided and this assuredly caused problems for counsel, particularly in light of the perceived problems in the numbering and differences observed between the initial privilege log identifiers and those in the actual documents produced following the Court's December 7, 2020 order. However, when Plaintiffs did confer with CRMC, CRMC's communications and responses were reasonable and prompt. While a finding of contempt does not require willfulness, the Plaintiffs have still not demonstrated by clear and convincing evidence that CRMC violated the Court's order compelling production.

Nonparty CRMC and the Court were neither afforded the proper time nor proper opportunity to address these issues before contempt sanctions were sought on the eve of trial in this matter. Just because someone thinks they see smoke, it doesn't necessarily mean there is a fire. Sometimes that smoke simply turns out to be fog, and all it would take is a bit of sunlight and time to clear the fog away and to illuminate the whole picture.

Accordingly and based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' *ex parte* application for an order to show cause why a contempt citation should not issue against nonparty CRMC (ECF No. 151), is DENIED.

IT IS SO ORDERED.

Dated: **April 29, 2021**

_____
UNITED STATES MAGISTRATE JUDGE